Cockrell v. McIntyre.

161     59
99a ³487

COCKRELL, Appellant, v. McINTYRE et al.,

Division Two, March 12, 1901.

1. **Equity Court:** MATTERS SUBMITTED TO JURY. Under the Missouri statute, the court, in an equity case, is authorized to submit such issues to the jury as it thinks necessary. The court is not required to submit all the issues simply because it submits one issue.

2. ———: ———: QUESTION OF LAW. The court, in an ejectment suit, in which the defense was that the defendant had bought the land by an exchange therefor of mining stock with plaintiff's ancestor, T. J. Wallace, but had afterwards been refused a deed, submitted this question to the jury: "Did T. J. Wallace and defendant Lawson, on September 12, 1896, enter into an oral contract for the exchange of land for mining stock." *Held,* that the vice of this submission was that it was one of law and not one of fact, in that it devolved upon the jury the necessity of deciding what a contract was. Nevertheless, as the verdict of the jury was merely advisory, this being an equitable suit, the judgment should not, be reversed on this ground alone.

3. **Purchasing Land:** AGENCY: EXTENT OF AUTHORITY. One Wallace and defendant had had some conversation in reference to exchanging mining stock for land. They separated, and next day Wallace sent a note in which he suggested that the president of the mine would attend to the matter for him. *Held,* that this fell far short of giving such third party authority to enter into a contract beween Wallace and defendant for the exchange of land for stock. This was the extent of the authority given by Wallace to such third party, and the stock was never accepted by him, but defendant took possession of the land and claims it as a purchaser from Wallace. *Held,* that there was no contract of purchase, and the plaintiff, who is the grantee of said Wallace, is entitled to recover.

4. ———: STATUTE OF FRAUD. A parol contract for the purchase of land is not taken out of the statute of frauds by the vendee entering into possession unless he took possession by the consent of the vendor in pursuance of said contract.

Cockrell v. McIntyre.

Appeal from Cooper Circuit Court.—*Hon. D. W. Shackleford,* Judge.

REVERSED AND REMANDED *(with directions).*

*W. M. Williams, John Cosgrove* and *J. W. Cosgrove* for appellant.

(1) There was no contract entered into between Wallace and Lawson. The minds of the parties did not meet. Barton Bros. v. Hunter, 59 Mo. App. 610; Green v. Cole, 103 Mo. 70. (2) The submission to the jury of a single issue was improper. The recovery of specific real property was in issue, and the verdict of the jury should have been general. R. S. 1899, sec. 721; Majors v. Rice, 57 Mo. 384. (3) Wallace's note to Lawson was not a sufficient memorandum of a contract for the sale of real estate to satisfy the statute of frauds. No mention was made of land, or the sale of land; neither by it, nor by any other writing, was Wells authorized to act as Wallace's agent for the sale of lands in controversy. "All the authorities are to the effect that to satisfy the statute the memorandum must contain a description of the land, the terms of the sale and the names of the seller and buyer." McKeag v. Piednor, 74 Mo. App. 594; Kelly v. Thuey, 143 Mo. 435; Hubbard v. Hubbard, 140 Mo. 300; Whaley v. Hinchman, 22 Mo. App. 483. (a) It was error to permit defendants, over plaintiff's objection, to supplement the contents of the note or letter, with a conversation between Wallace and Lawson at Bunceton on September 22. Kelly v. Thuey, 143 Mo. 436. (b) If there was a contract, it was executory. Wallace's repudiation thereof was timely, and equity will not compel its fulfillment. West v. Bundy, 78 Mo. 409; Dougherty v. Harsel, 91 Mo. 162. (4) As to

Cockrell v. McIntyre.

part performance: "In order to take the case out of the statute, upon the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable exclusively to the contract, but the contract should also be established by competent proofs to be clear, definite and unequivocal in all its terms." 1 Story Eq. Jur. (12 Ed.), sec. 764. "In all cases the entry of the purchaser must be with the knowledge of the vendor." Browne, Stat. Frauds (5 Ed.), sec. 483; Buretts v. Hook, 8 Mo. 271; 3 Pomeroy's Eq. Jur. (2 Ed.), sec. 1293; Eads v. City, 42 Mo. 117; Underwood v. Underwood, 48 Mo. 527; Paris v. Haley, 61 Mo. 458; Sitton v. Ship, 65 Mo. 302; Berry v. Hartzell, 91 Mo. 137; Emmel v. Hayes, 102 Mo. 186; Rogers v. Wolfe, 104 Mo. 9. (5) This is an equity suit, and this court will examine the evidence and pass upon it without reference to the errors committed by the trial court. The plaintiff had the legal title and was entitled to recover unless the defendant has proved such a contract and performance as a court of equity will enforce. Taylor v. Von Schrader, 107 Mo. 206; Knowles v. Mercer, 16 Mo. 455; Lins v. Linhardt, 127 Mo. 271.

*Bente & Wilson,* and *C. D. Corum* for respondents.

(1) Where in pursuance and on the faith of an oral promise of the owner that he shall have a deed for land, the purchaser enters into possession and makes valuable improvements the case is taken out of the statute of frauds, and he is entitled to a deed by special performance. Anderson v. Shockley, 82 Mo. 250; Emmel v. Hayes, 102 Mo. 186; Hays v. Railroad, 108 Mo. 544. An oral contract for the sale of lands is not, when partially executed, revocable at the will of either party, and it is for certain purposes binding. Parker

v. Niggeman, 6 Mo. App. 546. Where the purchase money is paid and possession is taken and improvements made under a verbal contract to convey land, such acts take the case out of the statute. Bowles v. Waltham, 54 Mo. 261. Possession alone without payment is sufficient part performance to authorize a decree for specific performance. Young v. Montgomery, 28 Mo. 604. But the possession must be under the contract and not a mere tenancy. Young v. Montgomery, 28 Mo. 604; Price v. Hart, 29 Mo. 171. (2) Wells was the agent of Wallace, and was authorized by him to close up the trade between Lawson and said Wallace. (a) An agent is a person duly authorized to act on behalf of another. Flesh v. Lindsay, 115 Mo. 1. (b) The authority of an agent to make a contract for the sale of land need not be in writing. Riley v. Minor, 29 Mo. 439. (c) Agency may be established by the testimony of the agent himself. Deane Steam Pump Co. v. Greenclark, 31 Mo. App. 269; Cape Girardeau v. Fisher, 61 Mo. App. 509; Haubelt v. Mill Co., 77 Mo. App. 672. (3) It was not error to permit defendants, over plaintiff's objections, to supplement the contents of the note or letter with a conversation between Wallace and Lawson at Bunceton on the twenty-second of September. The case of Kelly v. Thuey, 143 Mo. 435, does not apply to this case. If there was an error committed, it was harmless. The contract for the sale of the real estate had been partly performed and was taken out of the statute. Where the writing expresses but one side of the contract and the obligation of the other party must necessarily be shown by evidence aliunde, the rule against the introduction of parol evidence to vary written contracts has no application. Brink v. Hollrah, 3 Mo. App. 593. (4) If plaintiff below desired to take advantage of the special finding of the jury, he should have done so by motion in arrest of said judgment. Duncan v. Oliphant, 59 Mo. App. 1.

BURGESS, J.—This is ejectment for the possession of a tract of land in Cooper county. The petition is in the usual form. The ouster is laid on March 20, 1898. The damages claimed are two hundred and fifty dollars, and monthly rents is alleged to be twenty dollars.

The defendants answered separately. In McIntyre's answer, he denied all allegations in plaintiff's petition, and then alleged that he was in possession of the land as the tenant of his co-defendant Lawson.

The separate answer of defendant Lawson, after denying generally all the allegations in plaintiff's petition, proceeds as follows:

"This defendant further answering states that on the 22nd day of September, 1896, one T. J. Wallace was the owner of the lands in the plaintiff's petition described; that on said date this defendant traded for said land with said Wallace, giving in exchange therefor mining stock in the Sedalia Cripple Creek Mining Company, of the par value of six thousand five hundred dollars; that at the date of said trade or exchange said stock was of the market value of twenty-five cents on the dollar, or one thousand, six hundred and twenty-five dollars for the block lot so traded; that said mining stock was duly delivered by this defendant to the said Wallace, and accepted by the said Wallace in exchange for said land on the twenty-fourth day of September, 1896; that immediately upon the delivery of said stock as aforesaid, Wallace put this defendant in possession of the said land and agreed to execute and deliver to this defendant a warranty deed to same; that said defendant after being put in possession of said land, as aforesaid, made valuable and lasting improvements upon the same, and continued in possession thereof up to the fifth day of February, 1897, on which said date he conveyed said land by quitclaim deed to C. I. Wilson, which said deed was duly recorded

in the recorder's office of Cooper county, Missouri, in deed book
16, at page 299, on the eighth day of February, 1897; that
said Wilson has been in continuous possession of said land by
tenants, after same was conveyed to him by this defendant, up
to the nineteenth day of May, 1898, on which date said Wilson
reconveyed said land to this defendant by quitclaim deed, and
that this defendant is now in possession through his co-defend-
ant as tenant.

"This defendant further states that he has complied with
all of the conditions of his said contract with said Wallace
aforesaid on his part, but said Wallace has failed, refused and
neglected to comply with his part of said contract in this, to-
wit, that he has failed, refused and neglected to deliver to this
defendant a warranty deed to said land as by said contract
he agreed to do.

"This defendant further answering states that whatever
claim, if any, the plaintiff may have to said land, he acquired
long after this defendant owned said land and with full notice,
actual and constructive of this defendant's and this defendant's
grantor's right, title and claim to said land.

"This defendant further states that whatever claim the
plaintiff may have to said land he received the same without
any consideration whatever and holds the same for the mere
purpose of prosecuting this suit."

Plaintiff made reply to both answers denying all new
matter in them, and pleaded the statute of frauds with respect
to the contract set up by defendant Lawson.

The court, over the objection of plaintiff, submitted the
following question to the jury, to-wit: "Did T. J. Wallace
and defendant Lawson, on September 22, 1896, enter into an
oral contract for the exchange of the land for mining stock."

To sustain the issues upon his part, plaintiff read in evi-
dence a deed from T. J. Wallace and wife to him for the land,

dated March 10, 1898, and duly recorded in the recorder's office of Cooper county. He then proved the monthly value of the rents and profits and rested.

The facts briefly stated are substantially that on the twenty-second day of September, 1896, defendant Lawson and Thomas J. Wallace met at Bunceton, Missouri. Lawson was the agent of the Sedalia Cripple Creek Mining Company, and was selling its stock, and offered to exchange Wallace stock of said company for the land in controversy. They were unable to agree for the time being, as to the amount of stock to be given, but Wallace finally agreed to take stock of the face value of $6,500, and to consummate the trade the next day, the twenty-third of September, at the residence of B. C. Wells, who was president of said mining company. Wallace failed to appear at Wells's place to consummate the arrangement, but sent a note by a boy. Wells and Lawson were uncertain as to whom the note was addressed, but thought it was to Lawson. Lawson delivered it to Wells, however, but it was not produced at the trial because it was said to be lost. Wells claimed to have made a slight search for it after he was subpoenaed as a witness, but failed to find it. The contents of the note as stated by Wells, made no reference to the land. Lawson, in his testimony, over plaintiff's objection, said that the note or letter stated that Wallace was sick and that Wells would attend to that matter. Lawson prepared a written application for stock in the Sedalia Cripple Creek Mining Company and Wells afterward signed Wallace's name to this application, or memorandum, and delivered it to Lawson, who went to Sedalia, and later sent to Wells envelopes addressed to different parties, supposed to contain certificates of stock. Wells took to Wallace's house one of the envelopes which was addressed to him, and handed it to him, and he said he did not

Vol 161 mo—5

want it, but took it and laid it on a desk by the side of his bed in which he was lying sick, and when he started away Wallace picked up the stock and handed it to him and stated to Wells that he wished a talk with him before he finished the trade. Wells took the envelope back and had it in his possession at the time of the trial. The application was subsequently destroyed by Lawson. The note or letter from Wallace to Lawson made no reference to the real estate or to the terms of any agreement. Lawson claims to have taken possession of the land about September 30, 1896, and to have put defendant McIntyre on it. McIntyre testified that he entered upon the land October 20; that he knew at the time that Wallace claimed to own the land. Lawson, in a short time after the alleged verbal contract of September 22, 1896, called to see Wallace at his house; Wallace then denied ever having made the contract set up by Lawson, or that he had ever agreed with Lawson to exchange the land for mining stock; he became angry with Lawson and ordered him out of his house. Wallace did not know that Lawson claimed to have taken possession of the land until the date of this interview.

The plaintiff was put on the stand by defendants; he stated that Wallace told him at the date he purchased the land, March 10, 1898, that he had never traded or sold the land to Lawson. Lawson conveyed the land by quitclaim deed, dated February 5th, and acknowledged February 6, 1897, to I. C. Wilson, one of his attorneys, for the express consideration of one dollar. Wilson, by his quitclaim deed, dated May 1, 1898 (after this suit was commenced), re-conveyed the land to Lawson.

At the close of all the evidence plaintiff asked the court to instruct the jury as follows:

"Under the evidence in this case the jury will find the issues for the plaintiff.

Cockrell v. McIntyre.

"Although the jury shall believe from the evidence that Thos. J. Wallace had some negotiations with one C. C. Lawson about exchange of the land in the petition described for certain mining stock, the court instructs you that the plaintiff is entitled to recover unless the jury shall believe from the evidence that there was an agreement entered into and a meeting of the minds of said Wallace and Lawson, and unless there was a contract entered into whereby Wallace agreed to sell the land to Lawson for mining stock."

Which instructions were refused and plaintiff duly excepted.

No instructions were given.

There was a verdict and judgment for defendants. Plaintiff appeals.

While it is conceded by counsel for plaintiff that this is an equity suit (as to which we express no opinion. Sec. 721, R. S. 1899; Major's Heirs v. Rice, 57 Mo. 384) and as a sequence, the right of the court, if at any time during the progress of the cause it was of the opinion that it was necessary to determine any fact in controversy by the verdict of a jury, to direct an issue to be made up for that purpose (sec. 722, R. S. 1899), they claim that the submission to the jury was of a single issue, that is, whether or not T. J. Wallace and defendant Lawson on September 22, 1896, did enter into an oral contract for the exchange of the land for mining stock, when all the issues in the case should have been submitted, if any. But under section 722, Revised Statutes 1899, the court was authorized to submit such issues to the jury as it thought necessary. The vice of the issue submitted, however, was that it was one of law which was for the decision of of the court, and not one of fact to be passed upon by the jury. A contract is an agreement between two or more persons competent to contract, upon a sufficient consideration to do or not

to do some particular thing; the essential elements of which "are the existence of two or more contracting parties, a meeting of their minds by which each gives his voluntary assent to the thing agreed upon, and an obligation, either created or dissolved, which constitutes the subject matter of the undertaking." [7 Am. and Eng. Ency. of Law (2 Ed.), 98.]

The court should have told the jury, either in submitting the issue or in appropriate instructions, what was necessary under the facts disclosed by the record in this case, what were the necessary essentials, to make a contract between Wallace and Lawson, with respect to the exchange of the land in question for mining stock in the Sedalia Cripple Creek Mining Company, and not left them in the dark, as it did, with respect to this necessary information. However, as the verdict of the jury was merely advisory, we do not think the judgment should be reversed upon that ground alone. But with due regard for the verdict of the jury, and the judgment of the court to the contrary, we are unable to concur in the conclusion reached by them, for there was wanting the essential elements to the contract, the meeting of the minds of the contracting parties with respect to its terms and conditions, the delivery of the stock and its acceptance by Wallace, and the want of authority on the part of Wells from Wallace to enter into it, as is claimed by defendants to have been done. The only authority which it is claimed that Wells had from Wallace to make the contract seems to have been contained in a note written and sent to Lawson the morning next succeeding the day that he and Wallace had the conversation in Bunceton in which Lawson proposed to exchange mining stock for the land, and the most that is claimed for it is, that Wallace suggested in it that Wells would attend to the matter for him, but this fell far short of an authority upon the part of Wells to close the trade for the land, and to receive in payment therefor mining

Cockrell v. McIntyre.

stock.   But even this uncertain and indefinite note was lost
or mislaid and could not be found and was not therefore pro-
duced on the trial.   But this is not all.   After Wells received
the mining stock from Lawson, he went to Wallace's house,
found him in bed sick and handed it to him, and he said that
he did not want it, took it, and laid it upon a desk beside his
bed, and when Wells started to leave, Wallace picked up the
stock and handed it to him remarking that he wished to talk
with him before he finished the trade.   Wells took the stock
and has kept it in his possession ever since.   There can not
be, under these facts, any escape from the conclusion, that
Wells had no authority to enter into the contract in the first
place, and that the minds of the contracting parties never met
with respect to its terms and conditions in all its parts in the
same sense, which was absolutely necessary in order to con-
stitute a contract.   [Green v. Cole, 103 Mo. 70.]

But even if there was such an agreement, and Wallace
received in payment for the land the certificates of stock as
agreed upon, as the contract was in parol this did not take it
out of the statute of frauds, which requires all such contracts
to be in writing.   [Sec. 5186, R. S. 1889; Lydick v. Holland,
83 Mo. 703.]   Defendant however insists that he took pos-
session of the land under the contract, after complying with
its terms on his part, by and with the consent of Wallace,
and this was such part performance as to take the case out of
that statute.   But the evidence shows that Lawson did not
take possession with the consent of Wallace; upon the contrary
it shows that Lawson, in a short time after it is claimed by
him that the contract was entered into, went to see Wallace
at his house, when he denied having made the contract, or that
he had ever agreed with him to exchange the land for mining
stock, became angry, and ordered Lawson out of his house, and
that he did not know that Lawson claimed to have taken pos-

session of the land until after the time of this interview.

It follows that, upon any theory of the case, plaintiff was entitled to recover.

We therefore reverse the judgment and remand the cause with directions to the court below to enter up judgment for plaintiff for the possession of the premises, with an order to inquire as to the amount of damages, rents and profits, to be included in said judgment.

*Sherwood,* P. J., and *Gantt,* J., concur.