MAGGIE J. PARKER ADAMS *et al.* v. GUY F. CARLTON.
No. 15,289.   (95 Pac. 390.)

SYLLABUS BY THE COURT.

STATUTE OF FRAUDS — *Sale of Real Estate by Agent — Written Authority.*  A contract for the sale and conveyance of real estate, made by an agent of the owner, which the owner did not sign and for the making of which the agent had no authority in writing from the owner, is void under the statute of frauds as amended by chapter 266 of the Laws of 1905.

Error from Crawford district court; ARTHUR FULLER, judge.  Opinion filed April 11, 1908.  Reversed.

*James W. Reid,* and *John J. Jones,* for plaintiffs in error.

*D. H. Woolley,* for defendant in error; *W. J. True,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.:  This was a suit for the specific performance of a contract for the sale of two lots in Walnut, Kan., upon which there was a grain-elevator. In July, 1905, Maggie J. Parker Adams, a resident of Waterville, Kan., was the owner of the property, and learning that J. G. Nider, a neighbor, was going to southern Kansas she asked him to look after her property and the collection of an outstanding rent account. He investigated and made a report, and, through his wife, entered into correspondence with George Goff in regard to the care and disposition of the property. Nider's wife wrote the following letter, to which she signed her husband's name:

"WATERVILLE, KAN., July 7, 1905.
*"Mr. George Goff, Walnut, Kan.:*
"DEAR SIR—Please . find enclosed account against Chanute Grain Company for rent due on elevator situated on Lots 5 and 6, B. 23, near Santa Fe depot. Please push this and collect at once.  We enclose a letter from J. M. Goff saying they would rent elevator

at $10 per month and do their own repairing.    They owe rent on this to the enclosed statement.

"Please observe this letter and return to me when you have collected same.    If you think best you can have the attorney make the collection through you.

"We also enclose deed.    Have attorney look up matter and see if the gasoline-engine was in elevator when the transfer was made.

"If Chanute Grain Company will settle for $600 net to Maggie J. Parker she will turn over deed to said property and receipt in full for rent on said property. You are to get your commission above this for collection.    Please give us an early reply as to what you can do about this matter.

Yours truly,    J. G. NIDER.

"P. S.  All delinquent taxes will be paid so there will be no encumbrance on said property.    J. G. N."

A few days later Mrs. Nider wrote another letter to George Goff, as follows:

"WATERVILLE, KAN., July 13, 1905.

*"Mr. George Goff, Walnut, Kan.:*

"DEAR SIR—In reply to yours of the 12th inst. will say it seems to me that the letter of agreement in which they agree to keep elevator in repair and $10 month rent would be proof enough that they should pay it.

"Mrs. Parker wishes you to get entire rent due if you possibly can.    In making the offer of $600 she thought perhaps they would be more likely to purchase. Push the matter along and get the best possible price for it.                Yours truly,

J. G. NIDER."

On July 27, 1905, Goff sent the following telegram:

*"J. G. Nider, Waterville, Kan.:*

"Have purchaser for buildings and rent account. Six hundred.    Will you take it?    Answer quick.

GEORGE GOFF."

This telegram was received by Mrs. Nider, and after a telephonic consultation with Mrs. Adams she sent the following message.

"7-25-05.    WATERVILLE, KAN.

*"George Goff, Walnut, Kan.:*

"Yes, will accept as per your message.

J. G. NIDER."

Acting upon Nider's telegram, Goff entered into a written contract for the sale of the property to Guy F. Carlton, who paid $100 as part payment, the balance to be paid upon the delivery of a warranty deed. On the following day Mrs. Adams sold the property to C. E. Benedict, who is made a party to this suit, and executed a deed accordingly. In a trial, which was had without a jury, the court found in favor of Carlton, directing the cancelation of the Benedict deed and directing Mrs. Adams to execute a warranty deed under the Goff contract.

The contention of Mrs. Adams in the district court was that the contract relied on by Carlton is obnoxious to the statute of frauds, and the same question has been presented here upon both pleadings and evidence. She rightly insists that under the amended statute she cannot be held upon any contract for the sale of lands unless "some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." (Laws 1905, ch. 266, § 1.) It is conceded that the memorandum required by the statute may consist of several writings, or a number of letters and telegrams, if they are duly signed and sufficiently state the terms of the agreement. It will be observed that Mrs. Adams did not sign the contract, nor any of the letters or telegrams connected with the contract. She did not give any written authority to any one to sign her name, and no one did sign her name to the letters, telegrams or agreement. The deed spoken of in one of the letters was the one conveying the property to her, which appears to have been sent for purposes of identity. It is true that George Goff, who was looking after her property, undertook to make a contract of sale and that he signed it as agent. If the writings under which he acted had been signed by Mrs. Adams it might well be doubted whether he had authority to conclude a contract for the conveyance of the lots, or that it could be said that

he had conferred upon him any power beyond that of finding a purchaser for the lots.   In the recent case of *Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267, it was held that the ordinary transaction of listing land with a real-estate broker under a direction to sell it upon stated terms does not imply a power to execute a contract for its sale.   In one paragraph of the syllabus of the case, formulated by Mr. Justice Mason, it was said :

"Communications from the owner to a real-estate broker with respect to the sale of lands will be regarded as giving the agent only the authority usually incident to his employment—that is to say, to find a purchaser —unless a different intention is clearly shown, and no wider power than that is. necessarily indicated by the use of the words 'to sell' or 'to make a sale' in describing the purpose for which the agent's services are engaged, inasmuch as in common parlance 'to sell' is often used as meaning to negotiate or arrange for a sale, and a sale is spoken of as made when its terms have been orally agreed upon."

But even if the letters and telegrams purported to authorize Goff to execute a contract, it was not such authority as is necessary to take the contract out of the statute.   The amendment of the statute of 1905 in· respect to the authority of an agent to bind a principal is important.   It was changed from a provision requiring lawful authority, which did not prescribe the form, to one requiring lawful authority in writing. Under the statute as amended it is just as important that the authority of the agent shall be in writing as that the contract which he makes shall be in that form. Before Goff, therefore, could make a contract binding upon Mrs. Adams he must have had written authority directly from her, and such authority must have appeared on the face of the writings.   The only writings received by him which pretended to give authority were from Nider and not from her.   Neither Mrs. Adams's name nor any abbreviation of it was attached to any writing in the transaction.   While she had knowledge of the writings, and some of them were prepared and sent·

under her direction, her signature was not attached to any of them, nor was the name signed one which she had ever adopted or used. If the writer of the letters or telegrams had attached her name in her presence or at her request there would be room for the contention that the signature was her own, but there is no claim of an authorized use of her name. Under the statute of frauds a binding contract for the sale of real estate cannot be made by an agent unless such agent had written authority from his principal. Goff was, in a way, the agent of Mrs. Adams, but did not have the quality of authority necessary to the making of a binding contract for the sale of her lots. (*Albertson v. Ashton,* 102 Ill. 50; *Kozel v. Dearlove et al.,* 144 Ill. 23, 32 N. E. 542, 36 Am. St. Rep. 416; *Newlin v. Hoyt,* 91 Minn. 409, 98 N. W. 323; *Thompson v. New South Coal Company et al.,* 135 Ala. 630, 34 South. 31, 62 L. R. A. 551, 93 Am. St. Rep. 49; *Cockrell v. McIntyre,* 161 Mo. 59, 61 S. W. 648; *Trust Co. v. Garbutt,* 6 Utah, 342, 23 Pac. 758; 1 Clark & Skyles, Agency, § 50.) To whittle out the requirement that the authority of the agent shall be in writing would operate to nullify the recent amendment and to defeat one of the main objects of the statute.

Neither the pleadings nor the evidence in the case disclosed a valid contract for the sale of the property in question, and hence the judgment of the district court is reversed.