No. 23,262.

C. G. Artz, *Appellant,* v. D. M. McCarthy and Florence L. Judy, *Appellees.*

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Sale of Land—Authority of Agent to Make Binding Contract.* The correspondence and documents attached to the pleadings in an action for specific performance of a contract to sell real estate examined, and *held,* that the terms upon which the land was sold were not authorized by the owner, and were not binding upon him.

2. SAME—*Sale of Land—Statute of Frauds.* A real-estate dealer with whom a landowner has listed realty for sale has no authority to enter into a written contract obligating his principal to sell and convey the property unless such authority is conferred upon the agent in writing as prescribed by the statute of frauds, sections 4888 and 4889 of the General Statutes of 1915.

3. SAME—*Failure to Establish Contract—Action for Damages Likewise Fails.* When a cause of action for the specific performance of an

alleged contract for the sale of real estate fails because there was in fact no such contract, an alternative cause of action for damages for breach of the contract is likewise bound to fail.

4. SAME—*Offer to Sell Land—Delay in Acceptance of Offer.* An offer to sell a tract of land for $550 cash, "for immediate acceptance only" does not bind the owner when an acceptance is not made until two months and fifteen days thereafter.

Appeal from Cheyenne district court; CELSUS A. P. FALCONER, judge. Opinion filed June 11, 1921. Affirmed.

*E. E. Kite,* of St. Francis, for the appellant.

*A. W. Relihan, T. D. Relihan,* both of Smith Center, and *John L. Finley,* of St. Francis, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action for specific performance of an alleged agreement to sell a tract of land, and for damages for the breach thereof if the equitable relief prayed for could not be granted.

The defendant, D. M. McCarthy, a resident of Jewell county, owned a quarter section of land in Cheyenne county. Some time in 1917 he employed an attorney in Cheyenne county to quiet his title. He also listed the land with this attorney for sale, but upon what terms the record does not disclose. On September 14, 1917, this attorney wrote to McCarthy:

"I am now in position where I believe I can sell the land which you and I went to look at so as to give you $550.00 net and in addition I will stand the expense and attorney fee of quieting the title in your name. It may be, however, that you will only realize $150.00 cash when the deal is closed and carry back a mortgage of $400.00 on the land. This will give you the $550.00 without incurring the expense of quieting the title. I am of the opinion that but very little money will be advanced until the title is quieted, and then I think the whole transaction can be closed and your money and mortgage remitted to you. If this proposition is acceptable to you, you should at once write me and send me all the papers which you have in connection with this land, so that I may start the quiet title action in your name and enter into a contract with my prospective purchaser."

The record does not show that this letter was answered, but on October 3 defendant wrote to his attorney:

"As per our conversation over the phone to-day, I inclose herewith my check in the sum of $16.15 together with quit claim deed from Minnie

Artz v. McCarthy.

E. Phillips running in favor of myself conveying the southwest quarter of section eight (8), town one (1), range thirty-eight (38) West, Cheyenne county, Kansas, dated July 28th, 1917. Fifteen dollars of the above check is sent in lieu of cost bond to commence suit to quiet title to the above land, and $1.15 to pay recording fee of deed. I understand you desire to start suit immediately, and if you will kindly send me copy of the petition and all the proceedings for my office files and a complete record of this transaction it will be greatly appreciated.

"Now cencerning a sale of this property will say, I will accept $550.00 cash and execute quit claim deed, purchaser to pay attorney fees, and the cost of suit to quiet title, as per the terms of your letter of September 14th, 1917, with the exception that I would want to make this a cash deal, and would not care to take a mortgage back on the land for $400.00. This offer of course is for immediate acceptance only, as I regard it a bargain offer, and that the purchaser will thereby secure a good deal. . . .

"If your prospective purchaser decides to buy, I would . . . prefer to have title quieted in himself. I will be glad to hear from you as to what action is eventually taken, with copy of the pleadings in the event suit is commenced."

On October 11 McCarthy's attorney wrote to his client:

"I herewith hand you full copies of all papers in your quiet title action to the SW¼ 8-1-38. I filed this case this week and we will now be able to obtain judgment in the December term.

"I have written my party informing him that you desire the purchase price of this land in cash, and that the offer is only open for a few days. I will expect to hear from him within a week or so, and if I can close I will endeavor to sign him in a contract providing for the payment as soon as the title can be quieted and judgment obtained, abstract can be extended, examined and approved. Now in this respect permit me to say that I think that it would be much better for you and better for the purchaser to have this title quieted in your name as we have started it, then after judgment is obtained that you give a warranty deed as by this method the time for opening up the judgment would be limited to six months rather than three years, as provided by section 6974 Gen. Stat. of Kansas for 1915. I think when you study this matter over that you will agree with me that this is the best and most logical thing to do."

Without further correspondence or further authority, the attorney sold the land on October 15, 1917, to the plaintiff, C. G. Artz, and gave him a bond for a warranty deed to be delivered on or before December 15, 1917, reciting as consideration and terms:

"Eight hundred dollars, to be paid as follows: $400.00 cash in hand the receipt of which is hereby acknowledged and the balance of $400.00 on or before the 15th day of December, 1917, said party of the first

part [McCarthy] on or before said date to furnish said party of the second part an abstract showing a marketable title to said real estate, free and clear of incumbrance, . . . Taxes for the year 1917 and all prior taxes to be paid by party of the first part."

McCarthy declined to be bound by this contract, and a few months later sold the land to his codefendant, Florence L. Judy. Thereupon Artz brought this action to compel a conveyance by McCarthy, or for damages in lieu thereof.

All these matters, including copies of the correspondence, and other less significant details, were set out in the pleadings. Defendants raised objections to the jurisdiction and to the cause or causes of action, most of which were overruled by the court. Defendants then answered and filed a cross-petition in ejectment and to quiet title. The matters raised by the pleadings were reconsidered by the trial judge, and it appears that he had some misgiving touching his earlier rulings on defendants' objections to the jurisdiction and to the plaintiff's pleadings, so he announced that if defendants would dismiss their cross-petition and strike out part of their answer he would give them judgment on the pleadings. Defendants complied with the court's suggestion, and judgment in their favor was entered accordingly.

· Plaintiff appeals.

Plaintiff contends that the agent's authority to sell the land was never revoked. Neither the extent of the agent's preliminary authority nor the original terms of sale prescribed by the owner are disclosed in the record, but from the later correspondence it is perfectly clear that before the sale of the land to the plaintiff, the defendant owner had prescribed the precise terms which he would then accept—$550 cash for a quitclaim deed, and this offer, with other conditions, was "for immediate acceptance only."

The agent closed a contract with plaintiff on terms he had no authority to make; and, indeed, it is not shown that he had authority from the defendant owner to execute any sort of written contract in his behalf. (*Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267; *Wiggam v. Shouse,* 105 Kan. 637, 185 Pac. 896.) The written contract upon which plaintiff relies was of the sort to which the principal could not be bound by the act of his agent unless the agent's authority had been by power of attorney or similar instrument in writing. (Gen. Stat. 1915,

§§ 4888, 4889; *Brown v. Gilpin*, supra; *Adams v. Carlton*, 77 Kan. 546, 95 Pac. 390; *Smith v. Schriver*, 91 Kan. 582, 138 Pac. 584.)

It is therefore obvious that no valid contract between plaintiff and the defendant owner existed, and specific performance was properly denied. And plaintiff's alternative cause of action—for damages for the breach of the contract if relief in equity were denied—was likewise bound to fall, when there was no valid contract to be breached.

The record also shows that on December 18, 1917, the defendant's agent sent his principal a check and draft for $550 and a quitclaim deed to be executed, presumably in disregard of the written contract which he, the agent, had made with plaintiff; but that could not be construed as an "immediate acceptance" of defendant's offer made in his letter of October 3. Furthermore this action was founded on the unauthorized written contract of December 15, not on an "immediate acceptance" of the offer of October 3.

The record contains no error, and the judgment is affirmed.