BYRD *et al.* v. PIHA.

1. While, under the act of August 25, 1925, the trial judge may hear and determine all demurrers in equity causes in which extraordinary relief is sought, at any interlocutory hearing before the appearance or first term, he is not obliged to do so, but may postpone the hearing of such demurrers until the hearing of the same may be reached in due order.
2. Contracts creating the relation of landlord and tenant, for any time exceeding one year, must be in writing; and when executed by an agent, the authority of the agent to execute it must likewise be in writing.

No. 6136.  DECEMBER 16, 1927.

Agency, 2 C. J. p. 452, n. 29.
Frauds, Statute of, 27 C. J. p. 295, n. 3; p. 297, n. 23.
Injunctions, 32 C. J. p. 342, n. 20.

Injunction. Before Judge Humphries. Fulton superior court. June 23, 1927.

*Randolph, Parker & Fortson,* for plaintiffs in error.

*Alston, Alston, Foster & Moise,* contra.

HINES, J. Mrs. Byrd owned a business building. She authorized her husband, the authorization being oral and not in writing, to rent and lease her real estate. In pursuance of this oral authority the husband, on October 12, 1925, leased to Piha this building for a period of five years from December 1, 1925, at a stated monthly rental, payable promptly on the first day of each month, in advance. This lease was signed by Piha as lessee, and by the husband in his own name as lessor. The lease contained a provision that on failure of the lessee to pay the rent when due, the lessor had the right, at his option, to declare the lease void, cancel the same without any legal proceedings, re-enter and take possession of the premises. The lessee, not having paid his rent for the month of August, 1926, received, on August 9, 1926, a letter from the husband, signed by the latter, his signature being followed by the word "agent," in which the husband as agent informed the lessee that the lease was canceled for failure to pay the August rent on the first day of the month when it was due, by the terms of the lease, and the lessee was told that from that time he would occupy the premises as a tenant at will, but that the rent would be the same until further notice. The rent for May, 1927, fell due on Sunday, and was paid on the next day. On May 4, 1927, the husband, as agent for his wife, notified the lessee that, as per the notice given on August 9, 1926, he was given sixty days in which to vacate the premises. Thereafter, on June 1, 1927, the lessee paid the rent for June, 1927. On June 1, 1927, the lessee filed his petition against the wife and husband, in which he sought to enjoin them from ousting him as a tenant at will, and to be relieved against the alleged forfeiture of his lease. The defendants demurred separately to the petition, upon various grounds.

The case came on for hearing on the application of the lessee for an interlocutory injunction. Counsel for the defendants presented to the court their demurrers. The court announced that it would postpone argument upon the demurrers until it had heard all of the evidence. Evidence, including the lease, was then introduced by the lessee. The lease was not executed under seal.

It was admitted that the husband was agent for his wife for the renting or leasing of her property and collecting the rents, such agency being created in parol, but that no authority in writing was ever given by the wife to the husband, of any kind and character, and that the wife had not ratified the execution of the lease in question. The court then announced that in its opinion the lease was valid, and granted an interlocutory injunction restraining the defendants from ousting the plaintiff from the premises as a tenant at will. Counsel for the defendants requested the court to require the plaintiff to give bond for double rent while the restraining order was in force. This the court refused to do, but in its order granting the temporary injunction required the monthly rentals to be paid on the first day of each month to one or the other of the defendants, and that the acceptance of such rents shall be without prejudice. The court declined to pass upon the demurrers of the defendants to the petition, but passed no order to this effect. To the judgment declining to pass upon the demurrers, and to the order granting the temporary injunction the defendants excepted upon the ground that they are contrary to law and to the evidence.

1. Under the act of August 25, 1925, the trial court may hear, pass upon, and determine all demurrers in equity causes in which extraordinary relief is sought, at any interlocutory hearing before the appearance or first term. Acts 1925, p. 97. But this statute does not make it mandatory upon the trial courts to hear demurrers upon interlocutory hearings; and the judge may, in his discretion, postpone the hearing of such demurrers until the hearing of the same may be reached in due course. The trial judge did not err in declining to pass upon the demurrers at the interlocutory hearing, at which he granted the temporary restraining order involved in this case.

2. We pass over the questions whether the plaintiff had an ample and complete remedy at law by which he could prevent being ousted as a tenant at will, and whether he had forfeited his lease, and, after forfeiture had occurred, whether he makes such a case as would authorize a court of equity to relieve against the forfeiture; and we shall deal with what we deem the vital and controlling question in this case. That question is this: Can the owner of real estate authorize another, by parol and without

any writing, to lease the same for a period longer than one year? "Contracts creating the relation of landlord and tenant for any time not exceeding one year may be by parol, and if made for a greater time, shall have the effect of a tenancy at will." Civil Code (1910), § 3693. The above section excepts from its operation contracts made between landlords and tenants for leases of land for periods of a year or less. It necessarily follows that a contract for a lease of land for a period longer than one year must be in writing. In view of this fact, can the landlord orally authorize another as his agent to execute a lease for a period longer than one year? In other words, must the agency for that purpose be created by writing? The answer to this question depends upon the construction of section 3574 of the Civil Code. This section declares that "The act creating the agency must be executed with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency is created. A corporation may create an agent in its usual mode of transacting business, and without its corporate seal." It will be noted that this section deals with the creation of agencies. It does not purport to prescribe the method of creating any particular class of agencies, except those created by corporations. It undertakes to provide the method of creating all agencies. Its terms are so broad that it takes in all classes of agencies which can be created by natural or artificial persons. There is nothing in the section which confines it to agencies created for the execution of instruments under seal. It lays down a broad and sweeping rule for the creation of all agencies. This rule is that "The act creating the agency must be created with the same formality (and need have no more) as the law prescribes for the execution of the act for which the agency is created." If the act can be executed by the principal by an oral agreement, he can appoint an agent to execute the act for him by verbal authority. This embraces the mass of agencies; for the general rule is that principals can execute most acts by verbal agreements, and can therefore authorize agents verbally to do such acts for them. The cases in which principals must execute contracts by agreements in writing are exceptions to this general rule, and are few in comparison with the mass of human transactions. Where the law prescribes that the act can be executed by the principal only by writing, then the act creating the

agency must be executed with the same formality; that is, the agency must be created by writing. So, under this section, the general method of creating agencies is prescribed in all cases. It provides for the creation of agencies, for the performance of acts which principals can perform without writing. It provides for the creation of agencies in cases where principals can only contract in writing. This embraces both simple contracts in writing and contracts under seal. It then provides for the creation of agencies by corporations. Thus this section embraces the whole range of agency. This is the plain and literal meaning of this section. It condenses in few and precise words the whole method of appointing agents. It is a stroke of genius. It exhibits the rare ability of stating a general principle of law in few and precise words, and so clearly as to embrace the whole subject-matter dealt with.

The construction of this section has been before this court in but one case, so far as our search discloses. That was in the case of *Brandon* v. *Pritchett*, 126 *Ga.* 286 (55 S. E. 241, 7 Ann. Cas. 1093), in which the majority of this court held that "There is no statute in this State requiring the authority to make the memorandum required by the statute of frauds to be in writing, and such authority may be conferred by parol." In that case the then Chief Justice was absent. Justices Lumpkin and Beck concurred dubitante, and Justice Atkinson dissented. The opinion of the majority in that case was prepared by the able and lamented Justice Cobb. While we have great respect for his learning and ability, we are not satisfied with the reasons given by him to support the majority opinion. His line of reasoning is, that the statute of frauds requires certain contracts to be in writing, but there is no provision in that statute requiring the authority of an agent to make the contract to be also in writing; that the general rule in England and America is that, although a contract for the sale of land must be in writing, an agent may be appointed by parol to make the contract, the general rule being that, unless the statute expressly requires the authority to be in writing, an agent may be authorized by parol to make a contract for the sale of land; that the section with which we are dealing "is to be construed as a codification of the existing law, unless there are words in the section which imperatively demand a construction which would

change the rule in force at the time the Code was adopted;" and that the law in force at the time the Code of 1863 was adopted only required contracts for the sale of lands under seal to be in writing. It is true that under our statute of frauds contracts or memoranda for the sale of lands must be in writing, and signed by the party to be charged therewith, or some person by him lawfully authorized. Civil Code (1910), § 3222. It is true that this statute does not expressly require that an agent who executes such contract or memorandum must be expressly authorized in writing to do so. Conceding, but not deciding, that the general rule both in England and America is as stated in the majority opinion, this rule has been changed by the section of the Code which we have under consideration. We do not think that this section undertook only to codify the law as it existed at the time the Code of 1863 was adopted. Confessedly this section changed the law relating to the creation of agencies by corporations, which, at common law, could be done only by instruments under seal. From this it clearly appears that the codifiers did not confine themselves to the codification of existing law, but undertook to change existing law, certainly in respect to agencies created by corporations. If the codifiers thus changed existing law in this respect, and the language of this section is broad enough to bring about another change in the law relating to the creation of agencies, in that it relates both to simple contracts in writing and specialties, we see no reason why we should depart from the literal construction of the section and from the plain meaning of the words therein used, and hold that the codifiers meant to confine the meaning of this section to the appointment of agents for the execution of contracts under seal alone. If this had been the intention of the codifiers, it would have been easy for them to have expressed it in this section, and not to have used language broad enough to cover the creation of agencies of all kinds. In the majority opinion it is conceded that the literal language of this section authorizes the construction which we put upon it. Then why should we depart from the plain meaning of the words used in this section?

We are of the opinion that the proper construction of this section is that agencies for the execution of agreements which are required to be made by principals to be in writing, must be created by written authority. Otherwise, the purpose of the statute of

frauds, which is to prevent frauds and perjuries, would be virtually done away with. So we are of the opinion that under this section the authority of an agent to execute a contract or memorandum for the sale of real estate or for the lease thereof for a period longer than one year, must be evidenced by writing. Under this section it is just as important that the authority of an agent shall be in writing as that the contract which he makes shall be in writing. Adams v. Carlton, 77 Kan. 546 (95 Pac. 390); Newlin v. Hoyt, 91 Minn. 409 (98 N. W. 323); 27 C. J. 295, § 374. This being so, the landlord, under the Civil Code (1910), § 3693, was not bound by this lease, except to the extent that it created a tenancy at will. It follows that the defendants should not have been restrained, after due notice, from proceeding to oust the plaintiff from the rented premises.

*Judgment reversed. All the Justices concur.*