J. P. RAMBO et al., Partners, etc., *Appellants, v.* THE
FIRST STATE BANK OF ARGENTINE, *Appellee.*

No. 17,819.

SYLLABUS BY THE COURT.

1. CHECK—*Liability of Drawee—Acceptance in Writing.* Under
sections 134 and 139 of the negotiable instruments act (Gen.
Stat. 1909, §§ 5380, 5385) the drawee of a bill is not obligated
to pay the holder unless and until he accepts the bill, and the
acceptance must be in writing and be signed by the drawee.

2. ——— *Equity Must Follow Statutory Law.* Equity must fol-
low the law in all cases in which the legislature has intervened
and prescribed rules of law which govern the rights of the
parties.

3. ——— *Oral Acceptance by Bank—Equitable Liability.* A
bank is not liable on equitable grounds to the holder for the
amount of an unaccepted check which it has refused to pay
because the holder acquired the check on the oral representa-
tion of the bank that the drawer had funds on deposit to meet
the check, that the check was good, and that the holder might
safely take it in payment for goods sold the drawer.

Appeal from Wyandotte district court, division No. 1.
Opinion filed December 7, 1912. Affirmed.

*Edwin S. McAnany,* and *Maurice L. Alden,* both of
Kansas City, for the appellants; *Henry L. Alden,* Kan-
sas City, of counsel.

*John A. Hale,* and *Richard J. Higgins,* both of Kan-
sas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: F. E. Mason deposited with the defend-
ant a check for $250 and received credit therefor on
account subject to check. Afterwards he drew a check
on the bank in favor of the plaintiffs for $150, to pay
for a diamond ring which he desired to purchase of
them. One of the plaintiffs communicated with the
bank by telephone, informed the cashier of the pend-

17—88 KAN.

ing ring transaction, and asked if the check was good. The cashier replied that Mason had on deposit sufficient funds to meet the check, that the check was good, and that it would be all right to let Mason have the ring. Relying on what the cashier said, the plaintiffs sold the ring and took the check in payment of the price. The bank then discovered that the check for which it had given Mason credit was fraudulent, and when the plaintiffs presented their check payment was refused. The plaintiffs sued the bank for the amount of the check, setting up all the facts. A demurrer was sustained to the petition and the plaintiffs appeal.

The plaintiffs base their right to recover on the principle of equitable estoppel as stated in *Clark v. Coolidge,* 8 Kan. 189:

"As a general rule estoppels *in pais* can apply only in the following cases:

"1. Where the party doing the act or making the admission knows at the time the truth of the matter about which he is acting or making admissions, or pretends that he knows the same, or has better means of knowing the same than the other party.

"2. Where the other party does not know the truth of the same.

"3. Where the act or admission is expressly designed to influence the conduct of the other party.

"4. Where the other party relies upon and is influenced by such acts or admissions." (p. 196.)

All these elements, except perhaps the third—and its presence may be conceded—were embraced in the allegations of the petition. The argument is that the bank's failure to investigate the genuineness of the check deposited by Mason before the plaintiffs inquired about it made the loss possible, and consequently that the bank, although innocent of intentional wrongdoing, is the one who in justice and good conscience must suffer.

The state of facts upon which liability is predicated

Rambo v. Bank.

is the old, old one of refusal to pay an unaccepted bill which the drawee orally recommended as good to the holder before he acquired it. The question in such .cases is, Was it the duty of the drawee to pay the bill? If not no liability attaches for refusal to pay, because no duty has been violated. The obligation of the drawee of a bill to the holder has been dealt with expressly by the legislature in the negotiable instruments act. The drawee is not liable on the bill unless and until he accepts it. (§ 134.) Acceptance is the signification by the drawee of his assent to the order of the drawer, and acceptance must be in writing signed by the drawee. (§ 139.) Section 134 relates to rights and duties, and not to form of remedy. It means that the drawee is not obligated to pay the holder unless and until he accepts, and the plaintiffs gain nothing by saying that they do not sue "on the bill." Neither do they gain anything by saying that they ground their action upon equitable considerations, since equity must follow the law in all cases in which the legislature has intervened and prescribed rules of law which govern the rights of the parties.

"The established rule, although not of universal application, is that equity follows the law, or, as stated in *Magniac v. Thomson,* 15 How. 281, 299, 'that wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legem* is strictly applicable.' . . . Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provision, a court of equity can not interpose to give validity to such transaction or contract, or any part thereof." (*Hedges v. Dixon County,* 150 U. S. 182, 192.)

The negotiable instruments act entailed no hardship upon the plaintiffs, for they might have asked for a certified check or might easily have obtained a lawful acceptance, and to permit them to recover on the the-ory proposed would loose again upon the business world the evils which the statute was designed to repress.

The judgment of the district court is affirmed.