No. 26,696.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDG-WICK, *Appellant,* v. ROBERT E. CONNERS et al., *Appellees.*

SYLLABUS BY THE COURT.

1. TAXATION—*Title and Rights of Tax Purchaser—Lien of Prior Taxes.* Where real property has been sold for delinquent taxes and bid in for the county by the treasurer, further sales of the property for unpaid taxes in subsequent years are forbidden by statute until the property is redeemed (or otherwise disposed of by procedure not here pertinent), and an acceptance by the county treasurer of payment of subsequent unpaid taxes, which ignores the prior sale and the county's additional lien for other unpaid taxes, was unauthorized by law, and was insufficient to serve as a legal basis for a tax deed, and those claiming under such tax deed could not successfully defend against the county's right to foreclose its lien for the earlier unpaid taxes lawfully imposed on the property.

2. SAME. In 1913 the taxes on a tract of land were not paid, and in 1914 the land was sold and bid in by the county treasurer for the county. In 1914 and 1915 the taxes were also unpaid. In 1916 defendants' grantor paid the delinquent taxes for 1915 and received a tax certificate evidencing such payment. This certificate was assigned, and the assignee paid the taxes for the years 1916, 1917 and 1918 on the property, and received a tax deed therefor. Plaintiff instituted an action to foreclose the county's lien for

Estoppel, 21 C. J. p. 1187 n. 80. Taxation, 37 Cyc. pp. 724 n. 32, 726 n. 46, 1191 n. 22, 1291 n. 78, 1477 n. 71, 1479 n. 88.

the taxes of 1913 and 1914. *Held,* that defendants who hold under the tax deed and as grantees of the original fee title holder cannot prevail against the county's right to foreclose its lien. for the unpaid taxes of 1913 and 1914.

3. ESTOPPEL—*Counties—Collection of Taxes.* In a county's capacity as a governmental agency to collect and conserve the public revenues, estoppel based upon unauthorized acts of its officials cannot be successfully invoked against the county.

Appeal from Sedgwick district court, division No. 4; A. MILLS EBRIGHT, judge. Opinion filed May 8, 1926. Reversed.

*Clyde M. Hudson,* county counselor, for the appellant.

*J. Graham Campbell* and *Ray Campbell,* both of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to foreclose Sedgwick county's lien on a small tract of land for delinquent taxes, interest and penalties. The defendants set up a tax deed issued by the county as a defense to the action. The cause was disposed of in the trial court on an agreed statement of facts, and judgment was entered for defendants.

The county board appeals.

The pertinent facts were these: The taxes on the property for the year 1913 were not paid and it was bid in by the county treasurer. The taxes for the years 1914 and 1915 were likewise unpaid. On September 5, 1916, the county treasurer sold the property to one DuBois for the unpaid taxes for the year 1915. DuBois assigned his certificate of sale to one Patten, and Patten paid all subsequent taxes on the property for the years 1916, 1917 and 1918, and pursuant thereto, on December 8, 1919, the county clerk issued a tax deed to Patten for the land concerned. Patten recorded his tax deed in March, 1920, and on February 1, 1922, Patten conveyed the property to Ray Campbell. The former fee title holder executed a quitclaim deed to the property in favor of Ray Campbell, who has been in possession since February 1, 1922.

The turning point in the lawsuit depends on the legal consequences attaching to the sixth paragraph of the agreed statement of facts, which reads:

"6. That on December 8, 1919, when said tax deed was issued to said property to R. G. Patten for the unpaid taxes of 1915, 1916, 1917 and 1918 there was unpaid back taxes on said described property for the year 1913 of $220.70 and for the year 1914 of $202.04, together with interest on each amount as pro-

vided by law, which taxes for said years 1913 and 1914 have never been paid, and this action is brought to foreclose a lien claimed by the county on said premises for the unpaid taxes of said two years, it having bought in said property in September, 1914, and 1915, at the sales thereof for delinquent taxes of 1913 and 1914."

The trial court ruled that by virtue of the tax deed of 1919 pursuant to the sale of the property for the unpaid taxes of 1915, the present holder under that tax deed, Ray Campbell, was the owner of the property "free from any claim or lien for any taxes for the years 1913 and 1914," and that the defendants were entitled to judgment for costs.

Was this judgment correct? The precise question has not heretofore been authoritatively settled in this jurisdiction. The appellee presses upon our attention certain excerpts from 26 R. C. L. 401, and 37 Cyc. 1477, which declare the rule in many jurisdictions to be that when the taxes are unpaid on a piece of property for a number of successive years and it is sold in due course for the taxes of each of such years, the purchaser at the sale for the taxes of the latest year takes the land free from any lien for delinquent taxes of former years; and that a valid tax sale cuts off the liens for taxes for any year previous to that for which the sale was made. But the whole matter of taxation, including the powers of the taxing authorities to deal with property on which taxes are not paid, and to conserve the public's revenues affected thereby, is governed by our own statutes; and general statements of abstract law gleaned from decisions of other jurisdictions are of little significance. In *Ness County v. Light & Ice Co.*, 110 Kan. 501, 503, 204 Pac. 536, it was said:

"The whole matter of taxation is statutory; the means for the recovery of delinquent taxes is prescribed by statute, and does not exist apart from the statute."

. In this case the county treasurer transcended his authority when he accepted money from DuBois for the delinquent taxes of 1915 while at the same time he ignored the county's lien for the earlier delinquent taxes of 1913 and 1914. No such prerogative is vested in the county treasurer. The county treasurer was authorized to bid in the property for the county under R. S. 79-2311, 79-2324, and 79-2325. Other pertinent provisions of statute read:

"79-2319. All lands and town lots bid off for the county at any tax sale shall continue liable to be taxed in the same manner as if they were property of individuals, and such taxes and charges shall be a lien upon such lands

and town lots, *but no lands or town lots so bid off for the county shall be sold for any taxes levied subsequent to such bid* until they have been redeemed, or shall be sold by the county, or the tax certificate issued to the county shall have been assigned. If the subsequent taxes shall not be paid by any other person, such lands and town lots shall be advertised with, and in the same manner as, the other lands and town lots on which the taxes are not paid, and shall be subject to the same charges as if they should be sold. The treasurer shall enter such taxes and charges in the book of tax sales of the year in which said lands were sold to the county, opposite such lands or lots, and such taxes ·and charges shall constitute an *additional lien.* . . .

"79-2313. The county treasurer shall give each purchaser, on payment of his bid, a certificate dated the day of the sale, describing the lands purchased, the amount paid therefor, and the time the purchaser will be entitled to a deed, which certificate shall be assignable. . . ."

The only lawful way DuBois could have acquired the county's interest in this property was by paying "into the county treasury a sum of money equal to the cost of redemption" for the taxes of 1913 and by paying the "additional lien" for delinquent taxes for subsequent years. In consideration of such payment, DuBois would have been entitled to the statutory certificate of purchase, which in fullness of time would have matured his right to a tax deed (79-2501) unless the owner of the property in the meantime had redeemed as permitted by R. S. 79-2412.

In view of these pertinent provisions of statute, as well as the county treasurer's want of authority for the execution of a tax sale certificate to DuBois for the delinquent taxes of 1915, the tax deed based thereon is invalid, and those claiming under that deed without other defense cannot prevail against the county's right to foreclose its lien for the delinquent taxes of 1913 and 1914.

Appellee suggests that Sedgwick county is estopped to enforce its lien for the taxes of 1913 and 1914 because of its tax deed to the defendants' grantor. The principle of equitable estoppel is very limited in its application to controversies in which government, national, state or local, is a party. If the county had owned this tract of land merely as a landed proprietor and had sold it to defendants' grantor pursuant to an ordinary contract of bargain and sale, probably the doctrine of estoppel would apply to the county as it would to an ordinary grantor. In its capacity as a mere governmental agency to collect and conserve the public revenues, estoppel based upon unauthorized acts of its officials cannot be successfully invoked against the county. (21 C. J. 1186; 10 R. C. L. 705, 707-708.)

It necessarily follows that the judgment of the district court to

the effect that plaintiff has no lien on the property concerned and that defendants own that property free from any claim or lien for any taxes for the years 1913 and 1914 is erroneous and must be vacated.

The judgment is reversed.