No. 39,400

JAYHAWK CONSTRUCTION COMPANY, INC., *Appellant*, v. THE CITY OF TOPEKA, and GEORGE SCHNELLBACHER, J. GLEN DAVIS, WILLIAM R. YERKES, LLOYD B. SMITH, and C. M. WILLIAMS, constituting the Board of Commissioners of the City of Topeka, *Appellees*.

(271 P. 2d 769)

Opinion filed June 12, 1954.

*E. H. Hatcher*, of Topeka, argued the cause, and *Harold E. Jones*, of Topeka, was with him on the briefs for the appellant.

*W. Glenn Hamilton,* of Topeka, argued the cause, and *Frederic J. Carman,* city attorney, of Topeka, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was a declaratory judgment action in which the plaintiff asked the court below to determine whether the City of Topeka or the plaintiff, the developer of a new addition in the city, was responsible for the extension of water mains into that addition.

For convenience, the appellant Jayhawk Construction Company, Inc., will be referred to as plaintiff, and appellees City of Topeka and the Board of Commissioners of the City, will be referred to as City.

The pleadings and agreed statement of facts, insofar as pertinent here, may be summarized as follows: The defendant is a city of the first class and owns and operates the water system of the city under the provisions of chapter 13, article 24, G. S. 1949.

The plaintiff is a Kansas corporation with its principal place of business in Topeka, and was the owner and developer of a forty-acre subdivision known as Westview Heights Manor, for residential purposes, all within the boundaries of the city, and had under construction 120 houses, none of which were available for sale or occupancy unless water was supplied. The city, since it took over the waterworks many years ago, had extended the water mains into new additions within its boundaries without requiring the cost of such extension to be paid by the developer of the subdivision concerned. From the time the city had controlled the waterworks it had extended water mains within the city limits without charging the cost thereof directly to the consumer. The city had extended its water mains to Twenty-fifth Street which was immediately adjacent to plaintiff's new addition. Plaintiff orally negotiated with the city for an extension of water mains into its new addition. The city refused to give plaintiff any consideration on the basis of the city's past practices. The city officials informed plaintiff that if water mains were extended into the new addition they would have to be paid for by plaintiff. Plaintiff had submitted a plat to the city which had been approved, and construction of 120 houses had been started. Most of them were under contract for sale, and water was necessary before they could be occupied. A controversy arose between the city and plaintiff in regard to whether the extension of the mains should be at the expense of the plaintiff or the city.

Before commencing this action, plaintiff more or less in the form of a demand filed an application with the city for extension of the water mains, which reads as follows:

"Comes now the Jayhawk Construction Company and makes application to the Board of Commissioners of the City of Topeka for extension of water mains into Westview Heights Manor, a sub-division of Lot 3 in the Southeast one-fourth of Section 10, Township 12 South, Range 15 East, Shawnee County, Kansas. A plat of such sub-division is attached hereto and made a part hereof.

"The applicant is delivering herewith, a good and sufficient cash bond in the amount of Five Thousand Dollars ($5000) by which applicant guarantees the use of a sufficient quantity of water for a period of two years to insure the City of Topeka an additional income therefrom, equivalent to a profit of ten percent per annum on the estimated cost of such extension. All in accordance with G. S. 1949, 13-2409 and City Ordinances, Chap. 27, Art. I, 27-102.

"Respectfully submitted,

"JAYHAWK CONSTRUCTION COMPANY, INC.

"By /s/ Kenneth L. Murrow

"Secretary-Treasurer"

Accompanying the application was plaintiff's certified check payable to the city in the amount of $5,000. The city returned the cash deposit to the plaintiff with the suggestion that the water mains could not be extended unless plaintiff agreed to pay therefor. In order to get water service, plaintiff entered into a contract with the city whereby the city agreed to extend the water mains into the subdivision upon plaintiff's paying the cost thereof. The contract contained a proviso that such payment by the plaintiff to the city for the extension of the mains should be without prejudice to the right of plaintiff to have determined in a court of law the liability and responsibility of the city to construct the water mains and, if successful, to recover its payment made for such extension.

Plaintiff contended it was the responsibility of the city to construct the water mains into the subdivision without cost to the plaintiff, as had been the practice and custom of the city in the past.

It was the city's contention that plaintiff's application for extension of water mains and its tender of a certified check in the amount of $5,000 failed to meet the requirements of G. S. 1949, 13-2409, in that plaintiff was a corporation and that its place of business was not within the boundaries of the subdivision, and it was not a bona fide resident property owner along the line of the proposed extension within the meaning of the statute, and that no bond as contemplated by the statute was tendered the city.

On the pleadings and stipulations of fact, the trial court made

conclusions of law, some of which will be hereinafter referred to, and entered judgment for the defendant for costs, from which judgment plaintiff appeals. Plaintiff's principal contention here is that it was the duty of the city to extend the water mains into the new addition as had been the practice and custom of the city for many years, and that a repudiation of such policy now amounts to discrimination as to this plaintiff.

G. S. 1949, 13-2409, in pertinent part, provides:

"The board of commissioners in cities of the first class shall make *no extensions* of water mains until fifty percent of the persons, firms or corporations, who are bona fide resident property owners along the line of the proposed extension, shall have first executed and delivered to such city a sufficient number of written contracts, the performance of which is secured by a cash deposit or a good and sufficient bond stipulating for a supply of water for a period of two years, to insure such city an additional income therefrom equivalent to a profit of ten percent per annum on the cost of such extension. Should said contracts for such extension be duly executed and such extension of water main be made, then the ten percent per year for the period of two years shall be prorated equally against all properties along said line of extension: *Provided,* That the board of commissioners shall have the right to extend a lateral water main connecting the ends of two or more parrallel lines to establish a circulation of water, and twenty percent of the cost of this extension shall be prorated against all properties along said line of extension, to be paid for as follows: fifty percent the second year, as provided for in the extension of water mains: . . . *Provided further,* That the department of waterworks of any city shall not make any such extension, as herein provided for, until it shall have first prepared its plans and specifications therefor and the same shall have been approved by the board of commissioners of such city." (Italics supplied.)

The above statute is clear and unambiguous. It is a part of chapter 13, article 24, G. S. 1949, pertaining to city-owned waterworks systems, and the powers and duties of the boards of commissioners, and cities in connection therewith. It is noted this statute is not a grant but a limitation of power to cities to extend water mains. It provides certain requirements be met before cities may exercise the power of extending water mains. An elementary rule of law is that municipal corporations are creations of law and may exercise only such powers as are conferred by the legislature and are bound by the limitations imposed upon them by that body. The trial court correctly concluded as a matter of law that the mentioned statute was a limitation of power upon the City of Topeka to extend its water mains, and that it was without authority to incur any liability or place itself under any obligation to extend such mains into plaintiff's subdivision until the provisions of the statute had been met.

Does plaintiff's application for extension of the city water mains meet the requirements of the mentioned statute? The answer is no. The application was nothing more than a request by the developer for installation of water mains into the subdivision. The applicant is under no obligation to purchase water, only that a certain quantity of water will be used. The application was not signed by fifty percent of the persons, firms or corporations, who were bona fide resident property owners along the line of the proposed extension, as the statute required. It would seem apparent that the legislature intended the city would be assured of a permanent development of an addition before installation of water mains. Such development contemplates people living in the community along the line of the proposed extension, and was to protect the city against purely promotional projects. A developer who is the owner of an entire addition is not a bona fide resident property owner within the meaning of the mentioned statute. The term "bona fide resident property owners along the line of the proposed extension" as used in the mentioned statute means as the trial court concluded, property owners who have established a residence along the line of the proposed water main extension, fifty percent of whom shall contract with the city to use a supply of water for a period of two years.

The bond that the plaintiff tendered to the city appeared on its face to be inadequate, in that there was no contract between the parties. Therefore, the bond secured nothing. The bond contemplated by the statute is for the performance of a contract to purchase water, and must be in such an amount as would insure adequate security for the amount of water to be purchased for a period of two years, and must otherwise comply with the statute.

Plaintiff stressed the fact that the city on all previous occasions had not enforced the provisions of the statute requiring developers of additions to the city to install water mains into their additions, or to supply the statutory bond in lieu thereof, and to now require plaintiff to comply with the statute is a discrimination against it. It is a well-settled rule that the failure of proper officials to see that a statute or ordinance is enforced and complied with does not make such statute or ordinance inoperative for that reason. (*Leigh v. City of Wichita,* 148 Kan. 607, 613, 83 P. 2d 644, 119 A. L. R. 1503, see anno. p. 1509.) Estoppel based upon unauthorized acts of officials of governmental agencies for failure to comply with a mandate of the legislature cannot be successfully invoked against a

municipality. (*Sedgwick County Comm'rs v. Conners,* 121 Kan. 105, 245 Pac. 1030.) A statute which has remained unenforced for a long period does not become inoperative for that reason. (*Kelly v. Washington,* 302 U. S. 1, 58 S. Ct. 87, 82 L. ed. 3.)

Considerable argument was presented in the briefs of counsel for the respective parties relative to certain rules and regulations passed by the city planning commission as to whether they were adopted, amended or repealed by the city governing body. We are of the opinion they are immaterial to the questions involved in this action. The aforementioned statute is controlling, and any attempt on the part of the planning commission or the governing body of the city to waive or alter the direct mandate of the legislature would be ineffectual and a nullity. Our authorities all hold that the only powers possessed by a city, or a political subdivision thereof, are those granted it by the legislature. It follows that the judgment of the trial court is affirmed.

It is so ordered.

PRICE, J., not participating.