(887 P.2d 1138)
No. 71,027

UNIFIED SCHOOL DISTRICT NO. 207 and UNIFIED SCHOOL DISTRICT NO. 453, *Appellees*, v. NORTHLAND NATIONAL BANK, *Appellant.*

Opinion filed December 30, 1994.

*John F. Thompson,* of Davis, Beall, McGuire & Thompson, Chartered, of Leavenworth, for appellant.

*Steven B. Doering,* of Law Offices of Steven B. Doering, of Garnett, for appellee Unified School District No. 207.

*Louis M. Clothier,* of Crow, Clothier, and Bates, of Leavenworth, for appellee Unified School District No. 453.

Before LARSON, P.J., ROYSE, J., and ROBERT G. JONES, District Judge, assigned.

LARSON, J.: Northland National Bank (Northland) appeals the grant of summary judgment in favor of Unified School District No. 207 (U.S.D. 207) and Unified School District No. 453

(U.S.D. 453), holding certain lease-purchase agreements were not in compliance with the Kansas cash-basis law, were voided by that law, and could not be the basis for equitable relief.

*Factual Background*

U.S.D. 207 and U.S.D. 453 executed similar lease-purchase agreements for photocopying machines and sorters with Century Office Products, Inc. (C.O.P.I.). Immediately after execution, C.O.P.I. assigned its interests to Mid Continent Leasing, which assigned its interests to Northland.

The July 1992 agreement with U.S.D. 207 was for a term of 61 months, requiring 24 payments of $2,300, 36 payments of $3,800 and a final payment of $14,500. The agreement contained a default provision enforceable "to the extent permitted by applicable law . . . to declare the entire amount of unpaid total monies for the balance of this contract due and payable."

The school district executed additional documents including a "Municipal Certificate," which stated in substance that U.S.D. 207 had complied with all procedures necessary to make the agreement legally binding and that all amounts due and payable for the current term were within the current budget. A second document entitled "Non Appropriation of Funds Addendum" relieved the school district of its obligations under the agreement under certain limited conditions but required additional covenants in that event.

The U.S.D. 453 agreements were executed in June of 1992 and provided for 60 monthly payments of $4,400 and a final payment of $19,426. These agreements contained the same acceleration clause, municipal certificate, and nonappropriation of funds addendum as were executed by U.S.D. 207.

In 1993, both school districts sued to cancel the lease-purchase agreements after they experienced difficulty in getting their machines serviced when C.O.P.I. suffered financial problems. The trial court granted the school districts' motions for summary judgment, finding the lease-purchase agreements were void since they violated the Kansas cash-basis law by not specifically including the required provisions of K.S.A. 10-1116b and K.S.A. 10-1116c.

The trial court further held Northland's argument that it had superior rights as a holder in due course because the Kansas Uniform Commercial Code, K.S.A. 84-1-201 *et seq.*, took precedence over the cash-basis law was without merit.

Northland appeals, contending (1) the trial court erred in holding the lease-purchase agreements and supporting documentation violated the Kansas cash-basis law and are void, (2) the trial court erred in holding as a matter of law that Northland was not a holder in due course under the Kansas Uniform Commercial Code, and (3) that principles of equity require the enforcement of the lease-purchase agreement notwithstanding the cash-basis law.

It is not disputed that the school districts lacked adequate funds to pay the full balance called for in the agreements during the fiscal year of their execution.

*Standard of Review*

It is a well-known rule of law that granting summary judgment is "appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). Because the issues in this case involve the construction of written instruments, a more applicable scope of review is that "the interpretation or construction and meaning and legal effect of written instruments are matters of law exclusively for the court." *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 311, 856 P.2d 111 (1993).

Northland argues unconvincingly that an issue of fact exists concerning whether the lease-purchase contract was contained in one document or several. This contention has no merit as the trial court considered all of the documents and correctly found that no factual issues existed and the contract terms either directly violated or were not in conformity with the Kansas cash-basis law.

Although the facts were not stipulated, none were controverted. No factual controversy exists which would preclude the grant of summary judgment.

*Legislative history of the Kansas cash-basis law*

The Kansas Legislature, during the depth of the depression in 1933, enacted the cash-basis law. See L. 1933, ch. 319, K.S.A. 10-1101 *et seq.* Also adopted were the budget laws, see L. 1933, ch. 316, K.S.A. 79-2925 *et seq.,* and the tax limitation, see L. 1933, ch. 309, K.S.A. 79-1945 through -1966.

Justice Harvey, in an early proceeding questioning the validity of the cash-basis law, *State, ex rel., v. Board of Education,* 137 Kan. 451, 452, 21 P.2d 295 (1933), summarized its purpose:

"Broadly speaking, it is designed to have such governmental units operate their respective functions on a cash basis—not to spend money they do not have or incur obligations they cannot meet promptly. Some of them, for one reason or another, had not been doing that, but had conducted their business somewhat on a credit basis. In some, proper books had not been kept, or sufficient publicity given, so that its citizens could know its financial status. It was thought waste, extravagance and an undue burden on taxpayers resulted from such methods of doing business, and the legislature deemed it prudent to change such practices and put all such governmental units on a cash basis."

A 1988 legislative interim committee report explained the genesis of the cash-basis law: "Prior to the Depression, many taxing subdivisions had accumulated sizable outstanding debts. At that time, many governing bodies did not know and probably could not readily ascertain their true financial condition. The 1933 cash basis and budget laws were enacted to remedy that situation." Report on Legislative Interim Studies to the 1989 Legislature, p. 349. In *State, ex rel., v. Republic County Comm'rs,* 148 Kan. 376, 381-82, 82 P. 2d 84 (1938), the cash-basis law's purpose was articulated as "the systematical, intelligent and economical administration of the financial affairs of municipalities and other taxing subdivisions of the state, so as to avoid waste and extravagance and yet permit such units of government to function so as to supply the governmental wants and needs of the people."

The law's statutory scheme requires municipalities to contract all indebtedness in conformity with the act. K.S.A. 10-1102. The statutory definition of a municipality includes a school district. K.S.A. 10-1101(a). Except where the act provides a specific exception, it is illegal for a municipality to create any indebtedness "in excess of the amount of funds actually on hand in the treasury

of such municipality at the time for such purpose." K.S.A. 10-1112.

A provision of the act critical to the trial court and our decision is that any contract "which violates the provisions of this act, shall be void." K.S.A. 10-1119. Records are required to be kept of the contracts creating liability, and anyone contracting with a municipality is charged with notice of the records' content. K.S.A. 10-1117.

The statutes do provide exceptions to the all encompassing cash-basis rule. For example, school districts are permitted to issue cancelable purchase orders for certain equipment and supplies in anticipation of funds becoming available in an upcoming budget year. K.S.A. 10-1113. In addition, a municipality can exceed the limitation on indebtedness where authorized by a vote of municipality electors, among other exceptions. K.S.A. 10-1116.

In 1980, the Kansas Legislature amended the cash-basis law by adding K.S.A. 10-1116b, which enumerated circumstances in which municipalities can enter into lease-purchase agreements. Such an agreement is permissible if it "specifically state[s] that the municipality is obligated only to pay periodic payments or monthly installments under the agreement as may lawfully be made from (a) funds budgeted and appropriated for that purpose during such municipality's current budget year or (b) funds made available from any lawfully operated revenue producing source." K.S.A. 10-1116b.

The legislative history of K.S.A. 10-1116b indicates that the language quoted above in part (a) was an attempt to clarify for municipalities when they could enter into lease-purchase agreements without violating the cash-basis law by adopting the interpretation given by several Attorney General opinions. Minutes of the House Committee on Local Government, February 18, 1980 (amendment "prescribes language for counties to use in lease/purchase contracts in order to prevent violating the Kansas cash basis law").

The supplemental note to HB 2955, as amended by House Committee on Local Government, reports: "Several Attorney General's opinions have said that any lease or purchase agreement

that binds a municipality beyond its current budget year is a violation of the cash basis law but a long term agreement containing the above stipulation does not violate the law." The purpose of requiring lease-purchase contracts to specifically state that the municipality's obligation could not exceed the funds budgeted and appropriated in the current year was to inform municipalities how they could avoid running afoul of the cash-basis law and not to impose some new obligation that did not previously exist.

In 1990, the Kansas Legislature added the following conditions applicable to the lease-purchase agreements permissible under the cash-basis law:

"(a) If the proposed agreement is for a term exceeding the current fiscal year of the municipality, it shall be approved by a majority vote of all members of the governing body.

. . . .

"(c) If the proposed agreement is for a term exceeding the current fiscal year of the municipality, the agreement shall specify the following: (1) The amount or capital cost required to purchase the item if paid for in cash, (2) the annual average effective interest cost, and (3) the amount included in the payments for service, maintenance, insurance or other charges exclusive of the capital cost and interest cost." K.S.A. 10-1116c.

The legislative history of this provision is also significant. By the late 1980s there was concern that the lease-purchase agreements authorized by the 1980 amendment were not subject to sufficient controls. A 1988 legislative interim committee expressed concern that "there is a need for limitations or safeguards [on lease-purchase agreements] such as requiring public notice, a public hearing, or some type of debt limit." Report on Kansas Legislative Interim Studies to the 1989 Legislature, p. 349.

The 1990 legislation arose out of SB 727 and was "drafted to be restrictive and give the people a chance to have a hearing and request a vote" on certain lease-purchases of land and buildings. Minutes of House Committee on Local Government, March 19, 1990. The problem the legislature was dealing with was summed up by testimony before the House Local Government Committee by Barbara Butts, Department of Administration Training Supervisor for the Municipal Accounting Section:

"Lease purchase agreements do not require voter approval as do most bond issues. Thus, some view lease-purchase agreements as loopholes because, while the long term obligations they create are similar to those of bond issues, the lease-purchase agreements can be used without voter approval."

When the legislature added the lease-purchase agreement provisions to the cash-basis law in 1980 and the additional conditions in 1990, it did not alter the recordkeeping aspects of the act so as to create a new mechanism for people contracting with the municipality to investigate whether the municipality had complied with the requirements for valid lease-purchase agreements. However, the common-law rule is that "[o]ne contracting with a municipal corporation is bound at his peril to know the authority of the municipal body with which he deals." *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, Syl. ¶ 9, 834 P.2d 1344 (1992).

The requirements related to lease-purchase agreements have not previously been interpreted by our appellate courts.

*Did the lease-purchase agreement, municipal certificate, and non-appropriations of funds addendum violate the requirements of the Kansas cash-basis law?*

Although other provisions might have been found to violate the cash-basis law, the trial court first found the agreements did not specifically state the school districts were only obligated to make payments from the funds budgeted and appropriated for the purpose during the current year as is required by K.S.A. 10-1116b(3). This statute recognized the validity of a lease-purchase agreement if the binding document between the parties contains the restrictions set forth in that statute.

As we previously stated, school districts are clearly subject to the provisions of the act and therefore any transaction that "create[s] any indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose" is within the scope of the act. K.S.A. 10-1112. A lease-purchase contract can be that type of transaction. See *J.D. Adams Co. v. Dor Township*, 153 Kan. 623, 113 P.2d 138 (1941). However, it is clear from the legislative history of the 1980 additions

that not all lease-purchase agreements were to be prohibited by the cash-basis law.

The agreements in issue in this case created indebtedness payable in the current year and in installments in future years. The Non Appropriation of Fund Addendum executed by both school districts provides:

"Notwithstanding any provision in the Lease Purchase Agreement to the Contrary, C.O.P.I. and User agree that in the event the User is not appropriated sufficient funds for equipment which will perform services and functions for which the equipment was leased (if such appropriation is specifically required to pay the Rental payment herein); and funds are not otherwise available to User to pay the rental payments; and there is no other legal procedure by which payment can be made to C.O.P.I., and the non appropriation of funds did not result from any act or failure to act on the part of the User, User shall have the right to return the Equipment to C.O.P.I. (at User's expense, to a destination C.O.P.I. directs, in good working condition (less normal wear and tear); and cancel this Lease Purchase Agreement by a notice to such effect served not less than thirty (30) days prior to the end of the User's fiscal year.

"Upon such early cancellation, User may not thereafter acquire functionally similar equipment for the full original term of the Lease Purchase Agreement. In the event, subsequent to early cancellation, funds are made available to User for equipment which will perform services and functions of the equipment; User agrees at C.O.P.I., option, to purchase, lease or otherwise acquire such equipment from C.O.P.I."

While the agreement provides the school districts with limited relief if the funds become unavailable, it nevertheless imposed rather stringent obligations on the school districts in future years. The provisions of C.O.P.I.'s agreements with the school districts are not consistent with the requirement of K.S.A. 10-1116b that a lease-purchase agreement, in order to be permissible under the statute, must create no binding obligation on the municipality in future years in order to avoid the type of indebtedness prohibited by K.S.A. 10-1112.

The C.O.P.I. agreements obligate the school districts to pay amounts in future years which are not a part of their current budgets. Under the contracts, the school districts remain liable if there are any funds available to pay on the contract, even if those funds were not budgeted for the contracts. The default provisions specifically give C.O.P.I. the right to declare the entire

amount of the unpaid monies due and payable. The agreements offend the wording of K.S.A. 10-1116b and violate the provisions of K.S.A. 10-1112, thereby voiding the agreements under K.S.A. 10-1119.

Further, it is clear that giving a privilege of cancellation does not immunize an agreement from the cash-basis law. See Att'y Gen. Op. No. 77-279. The trial court correctly determined the contractual provisions violated the requirements of K.S.A. 10-1116b.

In addition, the trial court also correctly ruled that the lease-purchase agreement violated K.S.A. 10-1116c because the documents failed to state: "(1) The amount or capital cost required to purchase the item if paid for by cash, (2) the annual average effective interest cost, and (3) the amount included in the payments for service, maintenance, and insurance or other charges exclusive of the capital cost and interest cost," as is specifically required by K.S.A. 10-1116c.

These provisions are public disclosure requirements which provide electors information with which they can hold municipalities accountable. These requirements were intended to apply mandatorily to all lease-purchase agreements running more than one year; therefore, this failure provides an independent ground for granting judgment irrespective of whether K.S.A. 10-1112 is applicable.

Northland argues the trial court's conclusion is erroneous because the statutory requirements are satisfied by the municipal certificates which were part of the lease transaction and which made the following representation: "[A]ll required procedures necessary to make the Lease Purchase Agreement a legal and binding obligation . . . have been followed. . . . Payments due and payable by the User under the Lease Purchase Agreement for the current contract term are within current budget and within an available unexhausted and encumbered appropriation of the [school budget]."

Northland argues these representations, while not "word for word" with the statute, comply in substance.

This contention is without merit. A lease-purchase agreement will be permitted only if it makes the specific disclosures which the statute requires. None of the documents affiliated with the transaction come close to filling the public notice requirement of K.S.A. 10-1116c. No wording of the cash-basis law can be construed to allow a general abstract statement to be substituted for the specific disclosure required by K.S.A. 10-1116c. The wording of the statute is clear, and the specific public disclosures must be made.

The statute requires that the agreement shall specify certain information. That information is not included in any of the documents before the court.

"Where a statute is clear and unambiguous, the court must give effect to the expressed legislative intent without regard to what the court thinks the law should or should not be. [Citation omitted.] Legislative intent must be derived from the language of the statute and where the language used is plain and unambiguous the court must follow the intent as expressed by the words used. [Citations omitted.] Where a statute is clear and unambiguous, it must be applied accordingly without judicial construction." *Kilner v. State Farm Mut. Auto. Ins. Co.*, 252 Kan. 675, 682, 847 P.2d 1292 (1993).

The common meaning of the mandatory directive is not inconsistent or out of harmony with other provisions of the cash-basis law. See *Kilner*, 252 Kan. at 686. Therefore, it is untenable to argue that the lease-purchase agreements under consideration here comply with the statute.

The effect of the contracts' failure to conform with the statute may be easily stated. They are expressly voided by K.S.A. 10-1119. The trial court's decision that the contracts are void is clearly correct.

*Does the Uniform Commercial Code supersede the cash-basis law in this transaction?*

Northland argues the Uniform Commercial Code (UCC) controls over provisions of the cash-basis law it postdates. *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, 624 P.2d 971 (1981). Northland contends this is a contract for a sale of goods under K.S.A. 84-2-105 which was assigned under K.S.A. 84-9-102. Northland claims the status of a holder

in due course under K.S.A. 84-3-302 and concludes that as a matter of public policy, the UCC should supersede the cash-basis law and allow Northland to rely on the municipalities' representations that the contracts complied with all legal requirements.

The trial court considered Northland's argument and concluded that even if Northland were a holder in due course, it is subject to the defense that the transaction is illegal and nullified by other law.

Northland's argument suffers from a number of fatal flaws. Although Northland argues the UCC should control because it is the latest legislative enactment, the applicable parts of the UCC actually predate the enactment of K.S.A. 10-1116b and K.S.A. 10-1116c. Northland identifies no conflicting provisions which would force the court to choose one act over the other. Additionally, as the trial court concluded, a holder in due course is not immune to the defense that a contract is illegal and nullified by other law. K.S.A. 1993 Supp. 84-3-305(a)(1)(B). The trial court correctly held it makes no difference whether the UCC applies to this transaction, and if in fact it did, we would reach the same conclusion and grant the school districts the identical relief.

*Do the principles of equity require enforcement of the lease-purchase agreements notwithstanding the Kansas cash-basis law?*

Northland argues that even if the transaction is prohibited under the cash-basis law, the court should grant equitable relief since C.O.P.I., Mid Continent, and Northland all relied on representations of the school districts. Northland requests that the school districts be estopped from denying the validity of the lease-purchase contracts.

In effect, Northland asks that equity be utilized to void the provisions of the Kansas cash-basis law. The Supreme Court of Kansas addressed substantially the same argument 77 years ago in *Construction Co. v. Sedgwick County*, 100 Kan. 394, 398-99, 164 Pac. 281 (1917):

"It is also suggested that as the board was acting within the scope of its apparent authority, under color of an election presumably held according to law, for the regularity of which the commissioners themselves vouched, the plaintiff was justified in assuming that all the necessary steps had been duly taken, was

not required to make a minute examination of the proceedings, and should be protected in its rights under the contract which it entered into in good faith in reliance on the action of the board. This reasoning, if sound, would in effect allow the board by indirection to exercise a power denied it by the statute—to accomplish a result which the law expressly forbids. The limitation on the power of the board is for the protection of the taxpayers, and acts done by the commissioners in excess of their legal powers can not work an estoppel against the public . . . ."

Northland's arguments ignore the fundamental reason for the cash-basis law. It is not the municipality which, ultimately, is protected by the law, but the taxpaying public as a whole. It is therefore inconsistent with the act to argue that the municipality by violating the terms of the cash-basis law deprives the public of the legal protection the law provides.

To invoke equity in this case would disregard the rule that "[e]quity follows the law and cannot be invoked in matters plainly and fully governed by positive statutes." *Pownall v. Connell*, 155 Kan. 128, Syl. ¶ 1, 122 P.2d 730 (1942). Equity will not interfere where the legislature has promulgated rules governing the rights of the parties. *Rambo v. Bank*, 88 Kan. 257, Syl. ¶ 2, 128 Pac. 182 (1912).

"[Courts] are bound by positive provisions of a statute . . . and where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provision, a court of equity can not interpose to give validity to such transaction or contract, or any part thereof." *Rambo*, 88 Kan. at 259 (quoting *Hedges v. Dixon County*, 150 U.S. 182, 192, 37 L. Ed. 1044, 14 S. Ct. 71 [1893]).

Additionally, " '[t]hose rights, duties, and privileges conferred and imposed upon a municipal corporation exclusively for public benefit cannot ordinarily be lost through nonuse, laches, estoppel, or adverse possession, and statutes of limitation are not ordinarily applicable thereto.' " *Devine v. City of Seward*, 174 Kan. 734, 737, 258 P.2d 302 (1953) (quoting *Douglas County v. City of Lawrence*, 102 Kan. 656, Syl. ¶ 4, 171 Pac. 610 [1918]); see also *Construction Co. v. Sedgwick County*, 100 Kan. at 394 (estoppel not applied where public rights are involved).

Northland attempts to utilize a statement from *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, Syl. ¶ 7, 834 P.2d

1344 (1992), as the basis for its argument that estoppel against the school districts is appropriate:

"Within the scope of its power and authority to act, a municipal corporation is subject to rules of estoppel in those cases where justice and equity require their application and where such application will not interfere with the proper exercise of governmental functions."

The validity of this statement presupposes the municipality was within the scope of its power and authority to act. As the school districts correctly point out, this is not the factual or legal scenario in this case.

Although it might at first appear that the school districts had the power to enter into lease-purchase agreements and simply failed to comply with the legislative conditions, such is not the case under the facts of this case. In discussing a waterworks statute 40 years ago, the Kansas Supreme Court said:

"It is noted this statute is not a grant but a limitation of power to cities to extend water mains. It provides certain requirements be met before cities may exercise the power of extending water mains. An elementary rule of law is that municipal corporations are creations of law and may exercise only such powers as are conferred by the legislature and are bound by the limitations imposed upon them by that body." *Jayhawk Construction Co. v. City of Topeka*, 176 Kan. 517, 520, 271 P.2d 769 (1954).

The abstract statement from *Blevins* relied on by Northland is simply not applicable to our facts. More applicable, *Blevins* specifically held that where a municipality fails to execute a contract in compliance with mandatory conditions prescribed by statute, estoppel does not and cannot apply. *Blevins*, 251 Kan. 374, Syl. ¶ 8. The act of entering into the lease-purchase agreements without complying with the cash-basis act was illegal. The resulting agreements are void. The trial court correctly held that the school districts could not be estopped from claiming and taking advantage of the legal effect of the contracts being determined to be void.

Affirmed.