40137.   ATLANTIC NATIONAL BANK v. EDMUND.

DECIDED JUNE 4, 1963—REHEARING DENIED JUNE 19, 1963.

64

*Ronald F. Adams,* for plaintiff in error.

*J. H. Highsmith,* contra.

HALL, Judge. ■ The plaintiff complains that the trial court charged the jury to the effect that unless the payee of the check had authorized his wife in writing to indorse the check for him, the Bank would not be a holder in due course.

Generally, the authority delegated to an agent must be conferred upon him with the same degree of formality as is required

of the agent in the execution of the powers delegated. *Code* § 4-105; *Byrd v. Piha,* 165 Ga. 397 (2) (141 SE 48). It is also true that under the Negotiable Instruments Law an indorsement must be written on the instrument itself or upon a paper attached thereto. *Code* § 14-402. However, even prior to the adoption of the Negotiable Instruments Law in 1924, an agent's authority to indorse a negotiable instrument did not need to be in writing, but could be conferred by parol. *Taylor v. Johnson,* 18 Ga. App. 161 (2) (89 SE 77); *Foster v. Cochran,* 89 Ga. 466 (15 SE 551); *Connor v. Hodges,* 7 Ga. App. 153 (4a) (66 SE 546). The Negotiable Instruments Law (*Code* § 14-219) specifically provides: "The signature of any party may be made by a duly authorized agent. *No particular form of appointment is necessary for this purpose,* and the authority of the agent may be established as in other cases of agency." (Emphasis supplied.) Both this State and other jurisdictions whose laws contain language similar to *Code* § 14-219 have uniformly held that an agent may be orally authorized to indorse negotiable instruments on behalf of his principal. *Cadow v. Dixson Co.,* 90 Ga. App. 717 (2) (84 SE2d 130); 7 Mercer Law Review 9, 12; 1 E. G. L. 599, § 25; II Paton's Digest 2076-2077, § 10; 3 Am. Jur. 2d 534, § 143; 2 CJS 1056, § 26; 37 ALR2d 461.

The trial court erred in overruling special grounds 1 and 2 of the motion for new trial.

■ The trial court charged the jury: ". . . any circumstances which place a prudent man upon his guard in purchasing a negotiable paper is sufficient to constitute notice to a purchaser of such paper before it is due, and the purchaser is charged with knowledge of whatever facts an investigation would have disclosed. Upon this question of notice of the plaintiff, such notice must have been in the purchaser before or at the time he purchased the note in order for the notice to affect him." The plaintiff assigns error on this charge as being unsound as an abstract principle of law in that it placed a duty upon the agents of the Bank to exercise the care of a "prudent man" in accepting a check in order for the Bank to become a bona fide purchaser for value.

Before the adoption of the Negotiable Instruments Law in 1924

■

the Georgia Code contained the language in the above charge preceding the first comma. This law was repealed by the 1924 act which substituted for it *Code* § 14-506 (Section 56 of the Uniform Negotiable Instruments Law): "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

The Georgia Supreme Court has held, in *Citizens &c. Nat. Bank v. Johnson*, 214 Ga 229, 231 (104 SE2d 123), a case involving a promissory note: "To constitute bad faith by a purchaser of a negotiable instrument before maturity he must have acquired it with actual knowledge of its infirmity or with a belief based on the facts or circumstances as known to him that there was a defense or he must have acted dishonestly." In this case the Supreme Court cited Gerseta Corp. v. Wessex-Campbell Silk Co., 3 F2d 236 (2d Cir.), in defining "bad faith." In the Gerseta case is a discussion of what this term means in Section 56 of the Uniform Negotiable Instruments Law, concluding that it means that the purchaser "must have knowledge of facts which render it dishonest to take the particular piece of negotiable paper under discussion. Knowledge, not surmise, suspicion, or fear, is necessary; not knowledge of the exact truth, but knowledge of some truth that would prevent action by those commercially honest men for whom law is made; . . ." Thus it appears that Georgia has adopted the objective test discussed in the Gerseta case, supra, for determining bad faith. Actual bad faith need not be shown, but only facts and circumstances sufficient to constitute red lights ahead and to cast upon the purchaser the duty to make inquiries. When the known facts and circumstances are sufficient to prevent the acquisition of the paper by commercially honest men without further inquiry, the purchaser must not proceed blindly. The neglect to make inquiry under such circumstances is more than mere negligence. It is a lack of commercial good faith. If in a commercial sense the purchaser acted in bad faith, the law will withhold from him the protection it would otherwise extend. The Supreme Court

decision is in accord with "the well settled rule . . . that mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude a transferee from occupying the position of a holder in due course, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith; but the existence of such facts may be evidence of bad faith, if they reasonably warrant an inference of dishonest action." 10 CJS 818-821, § 324 and 1963 Supp. See also Britton, Bills and Notes, 414, § 101; Beutel's Brannan, Negotiable Instruments Law, § 56, p. 776 et seq; 3 E. G. L. 307 308, § 45; 8 Am. Jur. 118-125, §§ 383-390; Rightmire, The Doctrine of Bad Faith in the Law of Negotiable Instruments, 18 Mich. L. Rev. 355.

The charge complained of erroneously stated what constitutes notice that will prevent a purchaser for value of a negotiable instrument from being a holder in due course. The evidence in this case presents a jury question whether the Bank had knowledge of such facts that its action in taking the check amounted to bad faith and whether the Bank is a holder in due course of the check. The trial court erred in overruling ground 3 but did not err in overruling ground 5 and the general grounds of the motion for new trial.

█ Evidence offered to establish an oral principal and agency relationship between Mr. and Mrs. Pope did not show a practice sufficiently regular and uniform to constitute a habit or custom in cashing checks at the plaintiff Bank. Green, Georgia Law of Evidence 168, § 67; American Law Institute, Model Code of Evidence 32, 189, § 307. However, the exclusion of the offered evidence was apparently harmless in view of Mrs. Pope's uncontradicted testimony that her husband orally authorized her to indorse this particular check. The trial court did not err in overruling ground 4.

*Judgment reversed in part; affirmed in part. Carlisle, P. J., and Bell, J., concur.*