A93A1162. MARTIN et al. v. WILLIAMS.
(451 SE2d 822)

Ruffin, Judge.

Kimberly Williams commenced this malpractice action against Dr. Dana R. Martin, individually, and Dana R. Martin, D.M.D., M.S., P.C. ("appellants"). Following trial in the matter, the jury awarded Williams $20,000 general damages and $30,000 punitive damages. Entering judgment on that verdict, the trial court also awarded Williams $10,282.82 in unliquidated damages interest pursuant to OCGA § 51-12-14.

Appellants then filed a motion styled as both a motion for new trial and a motion to set aside the judgment. The trial court denied that motion, and this appeal followed.

In the first appearance of this case before this court, we dismissed the appeal on the ground that the denial of both the motion for new trial and the motion to set aside the judgment required the discretionary appeal procedures under OCGA § 5-6-35. However, the Supreme Court found that direct appeal of the matter was proper and reversed. *Martin v. Williams,* 263 Ga. 707 (438 SE2d 353) (1994). The appeal is now before this court for consideration of the substantive

issues.

In 1983, Dr. Martin agreed, at Williams' request, to use "invisible" or lingual braces applied to the back of her teeth to correct her overbite. The roof of Williams' mouth was first fitted with a removable appliance and periodically adjusted in order to expand the arches gradually. Lingual braces were subsequently affixed to her teeth. Dr. Martin's office records reflect no analysis of Williams' progress. Approximately one year into her treatment, she began suffering severe headaches, painful jaw "popping," and teeth grinding which continued during the four years of her treatment by Dr. Martin.

When her teeth began to "slip down" in 1988, Williams sought treatment from a second orthodontist, Dr. Burch Cameron, who testified at trial that lingual braces were inappropriate appliances for her problem, and that to employ inappropriate appliances solely because of a patient's request falls below the minimum standards of professional care. Dr. Cameron completed Williams' treatment in 16 months and resolved her problems with teeth grinding, jaw popping, and headaches.

1. Appellants first enumerate as error the trial court's award of unliquidated damages.

"Where a claimant has given written notice *by registered or certified mail to a person against whom claim is made* of a demand for an amount of unliquidated damages in a tort action and the person against whom such claim is made fails to pay such amount within 30 days from the mailing of the notice, the claimant shall be entitled to receive interest on the amount demanded if, upon trial of the case in which the claim is made, the judgment is for an amount not less than the amount demanded." (Emphasis supplied.) OCGA § 51-12-14. This Code section is in derogation of the common law and must be strictly construed. *Resnik v. Pittman*, 203 Ga. App. 835 (418 SE2d 116) (1992). For that reason, a demand sent by certified mail to the insurer alone as notice to both insurer and insured does not comply with the statute's plain language and does not authorize prejudgment interest on unliquidated damages in a tort case. Id. at 836.

In the instant case, Williams' counsel notified Dr. Martin of his client's negligence claim in April 1988 by regular mail addressed to his office; in January 1989, he made a separate settlement demand for $25,000 to appellants' insurer "[f]or purposes of compliance with § 51-12-14." The record also contains Williams' counsel's affidavit stating that the claims adjuster for the insurer agreed to convey Williams' settlement demand to Dr. Martin, who had closed his practice and relocated to an unknown address. Although Williams argues that her counsel "gave the best notice possible to [appellants], under the circumstances," the record contains no evidence that counsel ever directed the demand by certified or registered mail to appellants in

compliance with the statute. Because of that non-compliance, the trial court erred in awarding prejudgment interest on unliquidated damages.

Moreover, it appears that the trial court erroneously considered the award of punitive damages in determining whether to award prejudgment interest. See *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875 (447 SE2d 302) (1994). Inasmuch as the compensatory award of $20,000 was less than the unliquidated demand of $25,000, the award of prejudgment interest could not be sustained in any event.

2. Appellants contend that the award of punitive damages should be reversed because there was no clear and convincing evidence of wilful, wanton, or malicious conduct as required by OCGA § 51-12-5.1. We disagree.

During the entire time he treated Williams and other patients, Dr. Martin was using unprescribed, addictive drugs and was taking Prozac to control symptoms of clinical depression. He was observed to stare vacantly at his patient for long periods; displayed dramatic mood swings; perspired profusely when the room was not hot; and made professional decisions that led a colleague to conclude that his practice was "out of control." The emergency suspension of his professional license ultimately forced Dr. Martin to seek treatment for drug abuse. Dr. Martin's extended treatment of Williams while impaired demonstrates such an entire want of care which would raise the presumption of conscious indifference to consequences so as to justify the jury's punitive damages award.

Appellants also assert the trial court erred in failing to bifurcate the proceeding on the issue of punitive damages as required by OCGA § 51-12-5.1 (d). However, appellants waived such an objection by acquiescing in the form of the verdict and failing to raise the issue at trial. See *Shaw v. Ruiz*, 207 Ga. App. 299 (1) (428 SE2d 98) (1993).

3. Appellants next contend that the court erred in denying their motion in limine and admitting evidence of Dr. Martin's drug addiction and the subsequent suspension of his professional license.

"[A]dmission of evidence is within the sound discretion of the trial court and appellate courts will not interfere absent abuse of that discretion. Evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence. [Cit.]" *Mantooth v. State*, 197 Ga. App. 797, 800 (5) (399 SE2d 505) (1990). In the instant case, we find no abuse of discretion in the trial court's decision to admit evidence of Dr. Martin's substance abuse during the period of his treatment of the appellee. Moreover, "[t]he expert's credentials are relevant to the weight and credit to be given by the jury to his testimony. [Cit.]" *Jones v. State*, 189 Ga. App. 232, 233 (1) (375 SE2d 648) (1988). Thus, evidence concerning the suspension of Dr.

Martin's dental license was admissible.

4. Appellants complain of the trial court's failure to charge the jury as requested concerning the elements of negligence, the meaning of "ordinary care" and proximate cause, the evaluation of expert testimony, and the standard required to award punitive damages. However, the charges given concerning those matters correctly stated the law and reflected the principles embodied in appellants' requests. The court's failure to charge in the exact language requested was not error. *Turner v. Malone*, 176 Ga. App. 132, 134 (4) (335 SE2d 404) (1985).

5. There is no merit in appellants' argument that the court's judgment failed to specify the joint and several nature of the jury's verdict against Dr. Martin and his professional corporation. The judgment reads, "[T]he plaintiff . . . shall recover from the defendants . . . the amounts of $20,000 as compensatory damages and, in addition thereto, the amount of $30,000 in punitive damages." The judgment is clearly joint and several.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Beasley, P. J., concur.*

DECIDED DECEMBER 2, 1994 —
RECONSIDERATION DENIED DECEMBER 16, 1994 — ▮

*Savell & Williams, Michael K. Jablonski, Robert E. Mulholland,* for appellants.
*Peter G. Williams,* for appellee.