A96A1931. UNION PLANTERS NATIONAL BANK v. CROOK et al.
(484 SE2d 327)

ANDREWS, Chief Judge.

Union Planters National Bank (now known as Union Planters Bank of Chattanooga and referred to hereinafter as Union Bank) appeals from the judgment entered on the jury's verdict in favor of defendants Mr. and Mrs. Crook on Union Bank's suit against them for breach of contract and warranty pursuant to OCGA § 11-3-413.

1. We address first Union Bank's third enumeration which is that the trial court erred in not granting its motion for directed verdict, "in that no credible evidence was proffered or elicited at trial which remotely indicated any conduct rising to the level of 'fraud in the factum' or *any other real defense*" to which a holder in due course would be subject pursuant to OCGA § 11-3-305.[1] (Emphasis supplied.)

Construing the evidence so as to support the jury verdict, *Mattox v. MARTA,* 200 Ga. App. 697 (1) (409 SE2d 267) (1991),[2] it was that

---

[1] OCGA § 11-3-305 was amended by Ga. Laws 1996, p. 1306 et seq., effective July 1, 1996. However, this case is not affected by these amendments and it is determined under the previous version of the statute, effective during the time of the transaction and trial of this case. Ga. Laws 1996, p. 1414; *Henderson v. Dept. of Transp.,* 267 Ga. 90, 91 (2) (475 SE2d 614) (1996); *Dowdy v. Earthwise Restaurant Mgmt.,* 221 Ga. App. 220, 223 (1) (471 SE2d 42) (1996).

[2] The standard for review of denial of a motion for directed verdict requires Union Bank to show that there was no conflict in the evidence as to any material issue and "the evidence introduced, with all reasonable deductions therefrom," demanded the verdict sought. OCGA § 9-11-50; *Pendley v. Pendley,* 251 Ga. 30 (1) (302 SE2d 554) (1983). Our review is pursuant to the any evidence standard and we do not consider the weight of the evidence. *J. B. Hunt*

these claims were premised on three checks written by Mr. Crook on Thursday, December 9, 1993. The checks, drawn on Independent Bank in Alabama, totalled $43,300[3] and were given by Crook to Southway Equipment Sales, Inc. (Southway) that night in connection with Crook's attempt to lease or purchase a 1991 Freightliner tractor from Southway. Southway was a dealer in used trucks and generally kept from 70 to 100 on its lot. Union Bank had loaned Southway over $300,000 pursuant to notes secured by real estate, inventory, and accounts receivable. Southway's business checking account was also at Union Bank.

As stated by Crook, and not disputed by Union Bank, Crook "gave them [Southway] the checks to hold the truck as a security deposit, until we could meet with Cargill [a third party leasing agent/financier] and get the financing arranged for the truck, and then make arrangements for the finance company to pay for the truck, and I'd get our checks back. . . . That was the understanding that we had when I left the dealership that night." On checks numbered 1341 and 1342, which totalled $42,000, the following notation appeared on the "Memo" line: "91 Flt. Trk, to be held for fina[n]ce app[roval]." On check 1344, for $1,300, was the notation "Paint job on 91 Flt. refundable for finance."

Despite this understanding, the three checks were deposited by Southway into Southway's account at Union Bank on Friday, December 10, along with other checks in a deposit totalling $99,300. This was the 94th deposit of that day for the teller processing it and would have occurred before 2:00 p.m. when the date stamp changed. As a routine matter, Union Bank had arranged with Southway that, although the deposited funds were still uncollected, if Southway made a deposit before 10:00 a.m. on any day when their account was in overdraft status, the bank would allow Southway to draw against the funds deposited that day. The account was in overdraft status on that Friday, and immediate credit was issued by Union Bank to Southway's account for the $99,300, against which Southway issued more than that amount in checks.

Having arranged for Cargill to finance the tractor's purchase, Crook called Southway on Friday, December 10, to so advise them. He was told[4] that the checks had been "accidentally deposited" and

<hr/>

*Transp. v. Bentley,* 207 Ga. App. 250, 254 (2) (427 SE2d 499) (1992).

[3] Check number 1341 was in the amount of $38,000, number 1342 was $4,000, and number 1344 was for $1,300.

[4] Both Mr. and Mrs. Crook testified that they spoke with either Susan or Keith Bogh, the owners and operators of Southway, concerning the checks. Although Southway was made a party to this action, service could not be effected on it or the Boghs. Union Bank, however, does not dispute that this conversation occurred, only that it was hearsay and should have been excluded on that ground as discussed in Division 3, infra.

he should stop payment on them. His wife then placed the stop payment order with Independent Bank. On Monday, December 13, 1993, Southway filed for bankruptcy and Union Bank was "inundated" with stop payment orders on checks which had been deposited into Southway's account. By December 16, Union Bank had received notice from the Federal Reserve that the Crooks' checks had not been honored. Union Bank physically received the returned checks on Friday, December 17.

On December 16, Crook signed a promissory note for $38,715.80 with Cargill for the truck and these funds were wired to Southway. Crook picked the tractor up that day at Southway and was told that his checks would be returned to him by mail. Crook was unaware of Southway's bankruptcy until Union Bank filed the instant lawsuit on May 13, 1994.

During Southway's bankruptcy, a dispute arose between secured creditors of Southway including Fleet Enterprises, Inc.[5] and Union Bank. Fleet had financed and consigned tractors and trailers to Southway in which it claimed a security interest. Union Bank had accepted notes and security agreements also pledging Southway's assets, including the inventory on Southway's lot, as collateral. At this point, Southway was indebted to Union Bank, solely through loans for which security had been pledged, for over $320,000. Also, because of the provision of credit to Southway for deposits consisting of uncollected funds, Union Bank claimed additional debt of "over $400,000" in Southway's overdraft status, represented by the stop payment orders, including the Crooks'.

After Union Bank and other creditors had filed for relief from the bankruptcy stay on December 20, 1993, by order of January 6, 1994, Southway's petition to declare bankruptcy was dismissed. That order stated that "all assets of the Debtor shall be distributed to those creditors claiming a security interest in Debtor's assets."

Union Bank and Fleet entered into an agreement on February 11, 1994, pursuant to which Union Bank assigned to Fleet all its rights in the pledged collateral in return for payment by Fleet of $700,000. That same day, Union Bank signed its assignment to Fleet as "true and lawful holder of the following described collateral debts, Promissory Notes, Georgia Deeds to Secure Debt and other instruments from Southway Equipment Sales, Inc. ('Borrower'), described as follows: . . . (9) [UCC Financing Statement] evidencing Assignor's security interest in all of Borrower's machinery, . . . and inventory . . . , *together with all accounts, contract rights, and accounts receiv-*

---

[5] Other consignors were involved in the dispute, but only to a minor extent and their interests do not affect the current matter.

*able then owned or thereafter in existence and all proceeds of the same. . . ."* (Emphasis supplied.) Union Bank represented the value of these assigned assets to be $810,700.43. Both in its complaint and in its evidence at trial, Union Bank contended that the checks issued by Crook to Southway were "contracts."[6]

Union Bank moved for summary judgment before trial, raising, among others, the same ground contained in the motion for directed verdict. The trial court partially granted that motion on January 31, 1996, to the extent that it concluded Union Bank was a holder in due course, OCGA § 11-3-303 (1), and that it had given value for the checks. That order further denied complete summary judgment, concluding that there remained for resolution by the jury "the issue of a possible payment of the check and the specter of a double recovery by virtue of the Plaintiff's agreement dismissing Southway's Chapter 11 Bankruptcy proceeding in which $810,700.43 of assets of Southway were released to secured creditors and subsequently transferred by Plaintiff to Fleet Enterprises, Inc. . . . The liability of any party is discharged to the extent of his payment or satisfaction to the holder. OCGA § 11-3-603."

The pretrial order was entered by the court on January 23, 1996, prior to the order partially granting and partially denying Union Bank's summary judgment motion. There, the issues stated for determination were whether the defense of fraud in factum existed and whether Union Bank recovered any and all damages arising from its claims against defendants by the recovery against Southway pursuant to the bankruptcy proceedings.

This order, as implicitly amended by the order partially granting and denying Union Bank's motion for summary judgment, controls the issues actually tried before the trial court and the context for the denial of Union Bank's motion for directed verdict. *Rockdale Body Shop v. Thompson*, 222 Ga. App. 821, 822 (2) (476 SE2d 22) (1996); see *Williams v. Safeway Ins. Co.*, 223 Ga. App. 93, 94 (476 SE2d 850) (1996).

Pursuant to OCGA § 11-3-305 (2), the holder in due course takes the instrument subject to the defenses of "(b) . . . illegality of the transaction, as renders the obligation of the party a nullity; and (c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms."

We need not decide whether, as a matter of law, it can be said that the transaction here involved only "fraud in factum" under sub-

---

[6] Roger Tudor, Executive Vice President of Union Bank, described the checks as "a contract, an agreement to pay, an obligation that Mr. Crook had made with Southway Equipment, thereby we being the holder in due course of that item."

section (c) as to which Union Bank was entitled to a directed verdict which was improperly denied. There was evidence presented from which the jury could conclude that the acceptance and deposit of the checks by Southway under these circumstances were fraudulent as to Crook under subsection (c) as theft by deception and a violation of the RICO statute. OCGA §§ 16-8-3; 16-9-20 (a); 16-14-3; *Citizens Nat. Bank v. Brazil*, 141 Ga. App. 388 (1) (233 SE2d 482) (1977); *Middle Ga. Livestock Sales v. Commercial Bank &c. Co.*, 123 Ga. App. 733, 734 (182 SE2d 533) (1971). Therefore, denial of Union Bank's motion for directed verdict on the fraud in factum ground, even if error, does not require reversal because there was sufficient evidence of illegality in the transaction to go to the jury, as well as the issue of satisfaction of the debt.

A ruling right for any reason will be affirmed. *Wm. Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 636 (5) (466 SE2d 872) (1995).

2. Enumerations 1 and 2 allege error in the trial court's denial of Union Bank's motions in limine and are considered together.

The first motion sought to limit evidence solely to whether Crook's debt to Union Bank was satisfied and the second sought to exclude evidence regarding Crook's financing with Cargill.

"A motion in limine is a pretrial method of determining the admissibility of evidence, as a party may secure a pretrial ruling on the admissibility of evidence or a ruling prohibiting any reference to certain evidence until its admissibility can be assessed in the context of the trial as it unfolds. [Cit.] By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995).

Admission of evidence is within the sound discretion of the trial court and this court will not interfere with that discretion absent abuse. *Martin v. Williams*, 215 Ga. App. 649, 651 (3) (451 SE2d 822) (1994). We find none here, since the Cargill financing was part of the res gestae of the Boghs' and Southway's illegal acts as to Crook and the payment of the debt was, according to Union Bank's argument, the sole issue to be decided.

3. Enumerations 4, 5, 6, and 7 allege error in allowing, respectively, "irrelevant evidence as to Southway Equipment Sales, Inc.'s financial condition[,] . . . irrelevant testimony as to Union Planters' accounting for any loss it suffered, whether it had insurance for such losses, or whether a verdict in its favor would constitute a 'double recovery[,]' . . . hearsay and irrelevant testimony as to conversations [the Crooks] had with Southway and documents Crook signed with

Cargill . . . [and] introduction of Cargill's hearsay and irrelevant documents." They are considered together.

To the extent that enumeration 5 contains more than one alleged error, in violation of OCGA § 5-6-40, we exercise our discretion to consider the one dealing with the "irrelevancy" objection. *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995).

To object that evidence is not relevant is no valid ground for objection. *Blue Cross of Ga./Columbus v. Whatley*, 180 Ga. App. 93, 94 (3) (348 SE2d 459) (1986); *Hudson v. Miller*, 142 Ga. App. 331 (1) . (235 SE2d 773) (1977).

Additionally, evidence of Union Bank's financial relationship with Southway and how their banking relationship was conducted was first introduced by Union Bank and it will not now be heard to complain of this evidence.

Union Bank also first introduced the issue of whether the bank was "out of pocket the money that the checks represented by virtue of the Federal Reserve process."

The hearsay objections made to Crook's conversations with the Boghs were properly overruled by the court's conclusion that the evidence was not being admitted to prove the truth of what was said, only to explain Crook's actions in response to them or as part of the res gestae. OCGA §§ 24-3-1; 24-3-2; 24-3-3.

There was no error.

4. Finally, Union Bank complains of the court's giving of "Appellees' Charge No. 9 (R., p. 422)," on fraud in factum. The record reference given is to Union Bank's Requests to Charge, and, in fact, Charge No. 9 contained therein is the charge requested by Union Bank and given by the court in its charge to the jury, not once, but twice. Error, if any, in the charge was self-induced and cannot be complained of on appeal. *Levin v. State*, 222 Ga. App. 123, 125 (3) (473 SE2d 582) (1996).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 18, 1997 — ▮▮▮▮▮▮▮▮▮

*Shumaker & Thompson, Everett L. Hixson, Jr.*, for appellant.
*Sawyer & Sawyer, Joy H. Sawyer*, for appellees.