A97A0917. DAL-TILE CORPORATION v. CASH N' GO, INC.
(487 SE2d 529)

McMurray, Presiding Judge.

Defendant Dal-Tile Corporation ("Dal-Tile") appeals from a bench trial ruling and judgment finding it liable to plaintiff Cash N'

Go for the amount of a check Dal-Tile wrote to Georgia Southside Commercial ("GSC"). After Cash N' Go cashed the $45,081.70 check, Dal-Tile stopped payment on it because GSC's president, George Pearson, had obtained the check from Dal-Tile on false pretenses. The trial court found Cash N' Go to be a holder in due course and rejected Dal-Tile's illegality defense. Dal-Tile claims the trial court's findings were erroneous as a matter of law. *Held*:

"In bench trials, the trial judge sits as the trier of fact and [her] findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *McMillan v. Motor Warehouse*, 221 Ga. App. 550, 551 (472 SE2d 120) (1996). The court found that in 1994, GSC obtained a subcontract to perform ceramic tile work for a federal construction project on which Blake Construction Company ("Blake") was the general contractor. To induce Dal-Tile to sell material to GSC, Blake agreed it would pay for the necessary tile by check payable jointly to GSC and Dal-Tile. Pearson or someone at his direction forged Dal-Tile invoices, sent them to Blake, and in return obtained a check made jointly to GSC and Dal-Tile in the amount of $97,199.75. On December 28, 1994, Pearson went to Dal-Tile and negotiated the Blake check to the supplier. In return, Dal-Tile drew a check in the amount of $45,081.70, payable to GSC, representing the difference between the amount owed Dal-Tile for materials and the amount of the Blake check.

On the evening of December 28, Pearson negotiated this Dal-Tile check to Cash N' Go, which recognized Pearson as the authorized representative of GSC and which had previously cashed, without incident, Dal-Tile checks made to GSC and endorsed by Pearson. The next day, Dal-Tile learned of the forged invoices and stopped payment on the check. Based on these facts, the trial court ruled Cash N' Go had acted in good faith without notice of any defect in the title to the check. The trial court noted, however, that earlier in 1994 Pearson had cashed without authorization checks made to GSC *and* another company. The court found the other company had eventually released its claims against Cash N' Go stemming from Pearson's actions.

The record fully supports these factual findings. The questions before this Court are whether these findings support the court's legal conclusions, by which it found Cash N' Go was a holder in due course of the Dal-Tile check and rejected Dal-Tile's defense of illegality.

1. A holder of a check is a holder in due course if he takes the check for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the

part of any person. OCGA § 11-3-302 (1) (1994 version).[1] The UCC definition of "good faith" applicable here is "honesty in fact in the conduct or transaction concerned." OCGA § 11-1-201 (19). Based on the evidence before it, the trial court was authorized to conclude that Cash N' Go acted honestly and without notice of dishonor, defenses, or claims against the instrument. See OCGA § 11-3-304 (1994 version) (defining conditions creating notice); *Dempsey v. Etowah Bank*, 204 Ga. App. 49 (418 SE2d 418) (1992).

Dal-Tile cites to inapplicable authority in support of its argument that Cash N' Go failed to act in good faith. The "reasonable commercial standards of fair dealing" definition of good faith applies to merchants engaged in the sale of goods and is not applicable here. See OCGA § 11-2-103 (1) (b) (1994 version). Dal-Tile's citation to *Tifton Bank &c. Co. v. Knight's Furniture Co.*, 215 Ga. App. 471 (1), 472 (452 SE2d 219) (1994), is equally inapplicable, as that case references a statutory defense that a bank may use when charged with conversion of a check with a forged signature or endorsement. See OCGA § 11-3-419 (1) (c) (1994 version). Finally, the cases requiring that a party inquire into the history of the check and the person presenting it, such as *Atlantic Nat. Bank v. Edmund*, 108 Ga. App. 63 (132 SE2d 103) (1963), were based on pre-UCC law and were superseded by the enactment of the UCC in 1962. *Tifton Bank &c. Co. v. Knight's Furniture Co.*, supra.

2. Dal-Tile further contends that even if Cash N' Go was a holder in due course, the trial court erred in rejecting its defense of illegality. Pursuant to OCGA § 11-3-305 (2) (b) (1994 version), a holder in due course of a check is subject to the defense that the underlying transaction was illegal to the point of rendering the obligation of the maker a nullity.

Dal-Tile argues the case sub judice is similar to *Middle Ga. Livestock Sales v. Commercial Bank &c. Co.*, 123 Ga. App. 733, 735 (182 SE2d 533) (1971), in which this Court held a sale of stolen cattle to be so illegal that a check made in payment of the stolen property could not be enforced by a holder in due course. However, we find the case sub judice controlled by the more recent decision of *Citizens Nat. Bank &c. v. Brazil*, 141 Ga. App. 388 (233 SE2d 482) (1977). In *Brazil*, as here, an innocent party gave a check to a contractor based on a fraudulent misrepresentation. Although the fraud amounted to the crime of theft by deception, this Court did not find the transaction tainted by illegality to the point that the transaction was null and void from the beginning. In the case sub judice, likewise, the Dal-

---

[1] Because these transactions took place prior to the 1996 revision of the Uniform Commercial Code ("UCC"), citations herein are to the prior version of the law.

Tile check was issued as a result of Pearson's fraudulent acts which induced Blake to issue Dal-Tile and GSC a check in excess of the amount owed Dal-Tile, and which induced Dal-Tile to issue GSC a check to which it was not entitled. The trial court found this fraudulent inducement did not rise to the level of fraud necessary to void the contract. The trial court's finding was not erroneous, and its decision comports with the policy of the Uniform Commercial Code to encourage the free circulation of commercial paper. See McDonnell, 17 Ga. L. Rev. 569, 576-577 (1983), Freedom From Claims and Defenses: A Study in Judicial Activism Under the Uniform Commercial Code.

3. In its final enumeration, Dal-Tile claims Cash N' Go was not entitled to prejudgment interest pursuant to OCGA § 7-4-15 because the amount of its claim was unliquidated. Although Cash N' Go apparently received a fee for cashing the check, the amount of its claim against Dal-Tile was fixed and ascertained by the amount of the check, a negotiable item which contained "an unconditional promise or order to pay a sum certain in money." See OCGA § 11-3-104 (1) (b) (1994 version). This enumeration is, therefore, without merit.

*Judgment affirmed. Beasley, J., concurs specially. Smith, J., concurs in the judgment only.*

BEASLEY, Judge, concurring specially.

The pivotal issue is whether the transaction whereby Pearson obtained the Dal-Tile check in consideration for the two-party Blake check, which was issued on the basis of forged Dal-Tile invoices, constituted an illegal transaction. If it did, then Dal-Tile had a defense against Cash N' Go, Inc. as a holder in due course which cashed the Dal-Tile check. Former OCGA § 11-3-305 (2) (b) (1994 version) provides such a defense in that it recognizes that such a transaction "renders the obligation of the party a nullity." Dal-Tile was the maker of the check but urges that, under those facts which were either undisputed or were found to be fact by the judge as factfinder, the transaction between it and GSC/Pearson was void ab initio. This is so, it reasons, because the Blake check, given in consideration for the Dal-Tile check which is the subject of the dispute between Dal-Tile and Cash N' Go, represented stolen money in that it was issued in exchange for fraudulent invoices.

This basis for the transaction did not render it illegal, that is void and not merely voidable. The common law distinctions apply to this OCGA § 11-3-305 (2) (b) (1994 version) defense, as recognized in *Milligan v. Gilmore Meyer, Inc.*, 775 FSupp. 400, 408 (S.D. Ga. 1991): "*Black's Law Dictionary* defines 'void' as 'Null; ineffectual; nugatory; having no legal force or binding effect; unable to support the purpose

for which it was intended.' *Black's Law Dictionary* 1411 (5th ed. 1979). The term 'voidable' is defined as 'That which may be avoided, or declared void; not absolutely void, or void in itself. That which operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared.' Id." Dal-Tile does not show that the transaction in which it issued its check in return for the larger Blake check which incorporated payment for tile supplied by Dal-Tile for the Butner job was illegal and void. Cf. *Unified School Dist. No. 207 v. Northland Nat. Bank*, 887 P2d 1138, 1146 (Kan. App. 1994), and our recent case of *Union Planters Nat. Bank v. Crook*, 225 Ga. App. 578 (1) (484 SE2d 327) (1997) (sufficient evidence of illegality in the transaction to go to jury on this defense against holder in due course).

I note that Dal-Tile did not claim fraud in factum, a defense under OCGA § 11-3-305 (2) (c) (1994 version), and on appeal expressly states that it "asserted the defense of illegality, not fraud." It did not prove illegality as a matter of law, and we are bound by the findings of fact made by the trial court and supported by evidence.

DECIDED JUNE 12, 1997 — Before Judge Lane.

*Austin & Sparks, John T. Sparks*, for appellant.
*Carl H. Hodges*, for appellee.