## A99A0593. WILLIAMS v. THE STATE.
(521 SE2d 27)

ANDREWS, Presiding Judge.

Allen Williams appeals from denial of his motion for new trial after his conviction of aggravated assault resulting from a fatal shooting arising from a disagreement over a quart of beer.[1] Williams was acquitted of murder and felony murder charges.

1. Williams' first, second, and thirteenth enumerations challenge the sufficiency of the evidence and are considered first.[2]

On appeal, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]

*Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

Viewed with all inferences in favor of the verdict, the evidence was that, on February 8, 1992, Williams and his female companion went to Willie's Tavern to have a few beers, and while in the bar, Wil-

---

[1] The order denying the motion for new trial was entered on March 16, 1995, but the record was not received in this Court from Fulton Superior Court until November 12, 1998, resulting in an over three and one-half year delay in consideration of this case.

[2] They are that the verdict was contrary to the evidence and strongly against the weight of the evidence, two of the "general grounds," *Stinson v. State*, 185 Ga. App. 543 (364 SE2d 910) (1988); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988), and that the court erred in denying his motion for directed verdict.

liams consumed several quarts of beer. After Williams and "Big John" Calhoun had both ordered quarts of beer, a disagreement arose as to who was entitled to the first one served, and harsh words were exchanged.

Calhoun was approximately 6' 5" tall and 268 pounds, while Williams was 5' 1" and 130 pounds.

Williams slapped Calhoun and then reached into his coat as the argument continued. Calhoun went outside the bar and was waiting against the wall. Williams then produced a small handgun, went to the door, looked out, and fired two shots in Calhoun's direction. One of the shots struck Calhoun in the abdomen. Calhoun then reentered the bar and slashed Williams across the throat with a knife. Calhoun later collapsed from loss of blood and died.

Williams testified that Calhoun slapped him and his companion first and that Calhoun fired the two shots out the bar door. According to Williams, Calhoun then left, returning after 45 minutes, and as Williams was opening the bar door for his companion, Calhoun and a couple of others jumped him. Williams testified that "I managed — by the time I did like that to reach for my gun, there was [Calhoun] come next to the other hand and there were two shots pow pow just like that." Williams also testified he was trying to protect himself and his companion, and the gun went off.

The issue of which version of these events to believe, Williams' or the State's, was for the jury, which resolved the credibility issues in favor of the State. OCGA § 24-9-80. As noted above, we do not determine credibility, only the sufficiency of the evidence, *Daras v. State*, 201 Ga. App. 512 (1) (411 SE2d 367) (1991), and it was sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *McSears v. State*, 226 Ga. App. 90, 92 (3) (485 SE2d 589) (1997).

2. Williams' third enumeration of error is that the trial court violated OCGA § 17-8-57 by stating, after hearing the pathologist, Dr. Koponen, recite his qualifications and after the State tendered him as an expert, that "[t]he Court will receive him as an expert." Williams argues this improperly gave the court's "official stamp" to the doctor in front of the jury.

Dr. Koponen conducted the autopsy of Calhoun and testified about the wounds he found and that, in his opinion, the bullet caused his death and it was a homicide.

An expert witness is anyone who, through training, education, skill, or experience, has peculiar knowledge that the average juror would not possess as to any question of science, skill, trade, or like questions; the expert witness may render an expert opinion within the witness' area of expertise after the qualifications have been proven to the trial

court. OCGA § 24-9-67; [cits.]. It is for the trial court to determine, as a matter of law after hearing evidence, whether a witness is competent by way of qualifications to render an opinion within their area of expertise. [Cits.]

*In the Interest of C. W. D.*, 232 Ga. App. 200, 206 (3) (501 SE2d 232) (1998).

Also, an expert's credentials are relevant to the weight and credit to be given to his testimony by the jury. *Martin v. Williams*, 215 Ga. App. 649, 651 (3) (451 SE2d 822) (1994).

*Jones v. State*, 189 Ga. App. 232 (1) (375 SE2d 648) (1988), relied upon by Williams, does not hold that it is error to qualify an expert in the jury's presence, as was done here. Instead, it disapproved of the court's further statement that the court had previously and repeatedly qualified the witness as an expert and "I have heard [him] testify more than once, and I've heard him testify on both sides of the issue. *I don't believe this witness is biased. . . .*" (Emphasis supplied.) Clearly, these statements not only accepted the witness as qualified as an expert, but also vouched for his objectivity and truthfulness, a violation of OCGA § 17-8-57.

The jury was instructed that the weight to be given to the expert's testimony was for the jury and that it was not required to accept the testimony of any witness, expert or otherwise.

There was no error in the court's accepting the doctor as qualified as an expert.

3. In his fourth and fifth enumerations, Williams urges error in the trial court's disallowance of the testimony of Officer Hutchins, who investigated a disturbance between the victim and two other individuals on January 1, 1992.

Despite Williams' statement to the contrary, the record shows that he did, in fact, make a proffer of Officer Hutchins' proposed testimony. The testimony, however, was that Officer Hutchins had no personal knowledge of the encounter, but knew only what he had been told by others. These statements were nonprobative hearsay and not competent evidence of prior violent acts by the victim. *Laster v. State*, 268 Ga. 172, 174 (2) (486 SE2d 153) (1997); *Haynes v. State*, 234 Ga. App. 272, 273 (2) (507 SE2d 151) (1998).

There was no error.

4. Williams complains of the trial court's exclusion of his Exhibits 17-1 and 17-2, which are described as self-authenticating medical records relating to Williams' wounds.

These exhibits, however, were not tendered into the record for purposes of this appeal, and there is, therefore, nothing for us to review in this regard. *Evans v. State*, 233 Ga. App. 879, 880 (2) (506 SE2d 169) (1998); *Harris v. State*, 230 Ga. App. 403, 404 (2) (496

SE2d 277) (1998).

5. In his seventh enumeration, Williams enumerates the court's failure to charge his request no. 30, dealing with spoliation of evidence, OCGA § 24-4-22, based on the absence of Calhoun's knife, which had been destroyed by the police property division due to Calhoun's death and his family's failure to claim the knife. OCGA § 24-4-22, however, is not applicable to criminal cases. *Clayton v. State*, 203 Ga. App. 843, 846 (5) (418 SE2d 610) (1992).

There was no error.

6. The eighth and ninth enumerations both allege error in the court's failure to give Williams' request nos. 14 and 15, both dealing with accident.

There was a discussion among counsel and the court during the charge conference, before closing arguments, as to whether both the requested charges on accident and self-defense could be given. Apparently, all participants were unfamiliar with *Turner v. State*, 262 Ga. 359, 361 (2) (c) (418 SE2d 52) (1992), in which the Supreme Court acknowledged that there could be situations in which both accident and self-defense, upon request, should be given. The State relied upon *Wilkerson v. State*, 183 Ga. App. 26, 28 (3) (357 SE2d 814) (1987), for the proposition that the two defenses were inconsistent.

Following this pre-charge conference, Williams' counsel stated that

> if Your Honor rules that I can only choose one of those, I'll go with self-defense. But, I will just turn that over to the Court and still request that both be given. I do want to acknowledge that I have just found those footnotes that appear to support what the State just said [regarding *Wilkerson*].

Even assuming that this statement preserved Williams' request for both charges, however, after the jury was charged, no objection was made to the court's failure to charge accident.

After the charge, the court specifically inquired as to objections, and Williams' counsel made two, neither directed at the court's failure to charge accident. Counsel did not reserve the right to make additional objections in a motion for new trial or on appeal. Under these circumstances, this failure amounts to a procedural default precluding appellate review of the charge. *Palmer v. State*, 271 Ga. 234 (518 SE2d 423) (1999); *Young v. State*, 238 Ga. App. 555 (519 SE2d 481) (1999).

7. Williams did specifically object to the court's instructing the jury that "[y]ou are not to be concerned yourself with punishment." Williams contends, in his tenth and nineteenth enumerations, that this instruction impermissibly shifted the burden of proof.

This argument has no merit. *George v. State*, 260 Ga. 809, 811 (5) (c) (400 SE2d 911) (1991); *Wilson v. State*, 233 Ga. 479, 482 (8) (211 SE2d 757) (1975).

8. The eleventh and twelfth enumerations deal with the testimony of Detective Harris and are considered together.

The eleventh enumeration is that Williams was prevented from asking the officer if anyone had subpoenaed Officer Hudson, the responding officer to the tavern, for the preliminary hearing. The transcript shows, however, that this question was repeatedly asked and answered. Officer Hudson was subpoenaed and did not show up.

State's Exhibits 1, 2, 3, and 4, photos of the tavern and environs, are the subject of the twelfth enumeration. The court sustained the State's objection to Williams' question regarding the fact that these pictures had not been destroyed by the police. Counsel for Williams then stated "[n]othing further," leaving this court with nothing to review in this regard.

9. The fourteenth and fifteenth enumerations were not the subject of objections or arguments made at trial and will not be considered here for the first time.

10. During the State's cross-examination of Williams, he was asked if, having heard the testimony of Davis, which differed from his, she was "not saying the truth." Williams objected that it was improper to ask one witness to comment on the testimony of another witness. The overruling of this objection is Williams' sixteenth enumeration of error.

Williams relies on *Cargill v. State*, 255 Ga. 616, 631 (17) (340 SE2d 891) (1986). *Cargill*, however, is factually distinguishable because there, one witness, who had not heard another witness testify, was asked if the other witness were lying. While the Supreme Court did agree, without citing authority, that it is generally "improper for counsel to ask a witness whether another witness is lying," id., this issue is controlled adversely to Williams by *Whatley v. State*, 270 Ga. 296, 301 (13) (509 SE2d 45) (1998), where the Supreme Court found that

> [t]he state's questions about whether other witnesses were lying merely emphasized the conflict in the evidence, which it was the jury's duty to resolve, and the trial court properly charged the jurors [regarding the determination of witness credibility]. *Tucker v. State*, 228 Ga. App. 321, 324 (2) (491 SE2d 420) (1997), quoting *Little v. State*, 194 Ga. App. 361, 362 (2) (390 SE2d 445) (1990); see also *Dorsey v. State*, 259 Ga. 809 (3) (387 SE2d 889) (1990) (the state may challenge the defendant's truthfulness on cross-examination by asking defendant if other witnesses are lying).

11. The final two enumerations deal with the court's giving of the "dynamite charge" and are considered together.

Here, the jury began deliberating around 11:30 a.m. on Thursday and continued until 6:00 p.m. Deliberations resumed Friday morning, at which time the jury indicated it was deadlocked. When the court indicated it was going to give the dynamite charge, Williams made a motion for mistrial on the basis the jury was hung.

(a) The denial of this motion is enumerated as error. As repeatedly held, however,

> the general rule in this state is that a motion for mistrial based on the length of the jury's deliberation is within the sound discretion of the trial court. [Cits.] *Cofield v. State*, 247 Ga. 98, 113 (274 SE2d 530) (1981). Moreover, the trial court is not bound to accept the jury's feeling that it is hopelessly deadlocked. *Todd v. State*, 243 Ga. 539, 542 (255 SE2d 5) (1979).

*Romine v. State*, 256 Ga. 521, 524 (1) (350 SE2d 446) (1986).

Denial of the motion for mistrial on this ground was not error.

(b) Williams then objected to the court's giving of the charge, stating that, while he had no authority to block giving the charge, he objected and, if the court were going to give it, "then at least include some language in there that the jury has the right to make whatever decision it needs to make whether it's a hung jury ultimately or no decision or whatever."

The charge given fulfilled this request, and the charge as a whole was appropriate. *Sears v. State*, 270 Ga. 834, 837-838 (1) (508 SE2d 191) (1999); *Romine*, supra.

The constitutional error argued on appeal was not asserted below and will not be considered here for the first time.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JULY 8, 1999.

*Mark V. Clark*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.